JOHNNY PERIVOLIOTIS, Plaintiff-Appellant, v. ROBERT PIERSON *et al.*, Defendants-Appellees.

Third District No. 3—87—0308

Opinion filed March 18, 1988.

Robert C. Condon, of Condon & Bruggeman, of New Lenox, for appellant.

Scott M. Hoster, of Davis, Varsek & Dystrup, P.C., of Joliet, for appellees.

PRESIDING JUSTICE BARRY delivered the opinion of the court:

Plaintiff, Johnny Perivoliotis, is the beneficiary of land trust No. 72—18350, which holds title to lot 5 of Unit 1 in the Maryville subdivision of Lockport Township, Will County, Illinois. On October 14, 1986, plaintiff filed suit in the circuit court of Will County for temporary and permanent injunctive relief and for damages for trespass to a strip of land in lot 6 of Unit 1, adjacent to lot 5, which plaintiff claims by adverse possession. Defendant Louis Joliet Bank holds legal title to lot 6 as trustee of land trust No. 1055—85, and defendant Robert Pierson is the sole beneficiary of that trust. According to the complaint, defendants entered the premises and deposited concrete blocks, sewer pipes, stakes and flags. Defendants answered the complaint, admitting that they entered the property in dispute, and countersued for ejectment. Upon motion of defendants, the trial court granted summary judgment in their favor, dismissing plaintiff's complaint and ordering plaintiff to vacate the premises in dispute. Plaintiff appeals on grounds that there are disputed issues of material fact and that the trial court erroneously concluded as a matter of law that the hostile nature of possession by plaintiff and his predecessors had been interrupted during the 20-year prescriptive period claimed by plaintiff.

From the record on appeal, it appears that both of the lots in question were owned by Bernard and Luella Rickerman prior to November 16, 1955. On that date, an undivided one-half interest in lot 6

was conveyed to Kenneth and Marie Carlton. In 1963, lot 6 was conveyed in trust to Kenneth Carlton, Jr., who conveyed it by trustee's deed to TomDon Real Estate Corporation on March 21, 1966, pursuant to an agreement for trust deed executed in May of 1964 between Carlton, Jr., and Thomas A. Woulfe, an individual. On June 21, 1985, Thomas A. Woulfe, as president and on behalf of TomDon Real Estate Corporation, conveyed lot 6 to Carl Liebermann. Liebermann thereafter conveyed it in trust to Louis Joliet Bank and Trust Co., the current holder of legal title, as aforesaid.

The pleadings, affidavits and exhibits of record further establish that lot 5 was conveyed to Thomas A. Woulfe on June 29, 1963, by Bernard and Luella Rickerman. On January 24, 1973, lot 5 was conveyed by Woulfe and his wife, Donna, to John and Frances M. Portuesi. The Portuesis entered into a contract with Peter and Florence Tsourmas for deed to the property in December 5, 1974. Thereafter, the property was transferred by deeds in trust to the Chicago Title and Trust Company in January 1980, and by a trustee's deed to Patricia Zupancic on April 23, 1984. Finally, on April 25, 1984, Zupancic conveyed lot 5 in trust to Heritage First National Bank of Lockport, trustee of land trust No. 72—18350, the current holder of legal title for the benefit of plaintiff.

Lot 5 is improved with a restaurant and a parking lot, the latter of which extends along the boundary between lot 5 and lot 6 and into lot 6 for a total area of approximately 1,750 square feet. According to the pleadings, the parking lot has been paved with asphalt and used as such for more than 20 years prior to the filing of plaintiff's complaint. Plaintiff contends that, inasmuch as the improvements on lot 5 and encroaching on lot 6 have been in existence continuously for more than the 20-year prescriptive period, by virtue of his possession and that of his predecessors in interest, he may now claim ownership in the disputed strip pursuant to section 13—101 of the Illinois Code of Civil Procedure (Ill. Rev. Stat. 1985, ch. 110, par. 13—101).

According to the affidavit of Thomas Woulfe, he and his wife, Donna Woulfe, are the sole owners and officers of TomDon Real Estate Corporation. Woulfe avers that during the period between March 1966 and January 1973, when he personally owned lot 5 and TomDon owned lot 6, he either did not occupy the strip in question in his individual capacity, or, if he did occupy it unknowingly, his occupancy was not adverse to TomDon. Woulfe further states that he did not serve notice on TomDon of his intent to obtain title to the area by adverse possession.

To establish title to land adversely to the interest of the title

owner, the party in possession is required to prove that during the 20-year prescriptive period his, her or its possession (including that of predecessors whose interests claimant seeks to tack) was: (1) continuous, (2) hostile or adverse, (3) actual, (4) open, notorious and exclusive, and (5) under a claim of title inconsistent with that of the true owner. (*Tapley v. Peterson* (1986), 141 Ill. App. 3d 401, 404, 489 N.E.2d 1170, 1171.) All presumptions are in favor of the record titleholder. To overcome such presumptions the claimant's proof must be clear and unequivocal. Claimant may not rely on implication or inference. *Morris v. Humphrey* (1986), 146 Ill. App. 3d 612, 496 N.E.2d 1209.

■■ ■ Considering the facts before us in the light most favorable to the plaintiff, we must assume that the parking lot for lot 5 in fact encroached on lot 6 during Woulfe's ownership of lot 5. We further assume that Woulfe's occupancy of the disputed strip was unintentional, or the result of mistake as to the true boundary line. Under these facts, plaintiff urges, defendants may not deny "hostility" and presume permissive use, because defendant's subjective intent is not controlling. Plaintiff relies on the rule that in Illinois, "occupancy to a visible and ascertained boundary for the statutory period is deemed the controlling feature in determining hostility in mistaken-boundary cases. [Citations.]" (*Joiner v. Janssen* (1981), 85 Ill. 2d 74, 83, 421 N.E.2d 170, 174-75.) Presumptions, however, are not applied lightly at law and should be avoided where factual circumstances require a contrary result. Thus, even assuming that this is a mistaken-boundary case, for reasons that follow we do not find that the presumption of "hostility" as set forth in *Joiner* mandates a reversal in this case.

The linchpin issue to be decided here is whether the trial court properly determined as a matter of law that Thomas Woulfe could not have possessed the strip in question adversely to the TomDon Real Estate Corporation, owned by Woulfe and his wife. The parties direct us to no Illinois authority on point. Defendants, however, call our attention to *Leigh v. Howard* (1915), 87 N. J. L. 113, 114, 93 A. 680, 681, in which the supreme court of New Jersey ruled that "a president of a corporation can[not] hold possession of [such corporation's] land adversely to the corporation, unless upon proof of express notice to the board of directors that he is holding it adversely." The court reasoned that "[m]ere open notorious possession in such a case is not adverse; since it must be presumed that the president is holding for the company, to which he stands in the position of trustee."

■■ ■ In our opinion, the law of Illinois equally supports the presumption applied by the New Jersey court. As a general rule, a corpo-

rate officer occupies a fiduciary relation to a corporation. (*Liddell v. Smith* (1965), 65 Ill. App. 2d 352, 213 N.E.2d 604.) Officers and directors are trustees for the corporation's stockholders, and as such they cannot have or acquire personal interests in conflict with their corporate duties. Under the facts presented, we find no reason to presume that Woulfe breached his fiduciary duty to TomDon by appropriating the disputed strip for his own use adversely or to the exclusion of TomDon. To the contrary, the presumption that Woulfe's possession was not adverse is supported by Woulfe's affirmative statement to that effect and by the fact that Woulfe took no action to notify TomDon that he was claiming the disputed strip so as to effectuate an ouster.

Rejecting the trustee theory of *Leigh v. Howard*, plaintiff insists that the TomDon corporation is a legal entity separate from its officers and stockholders. In this regard, plaintiff asserts that Thomas and Donna were not in fact the sole officers and directors of the TomDon corporation because corporate records indicate that one Elbert Elmore also served as an officer and director for a number of years.

■■ We do not find that plaintiff's assertion raises an issue of material fact. It is common practice in close corporations to include an outside officer/director, and the mere nomination of such officer/director does not affect the ownership or control of the corporate entity. Woulfe's affidavit is unrebutted with respect to his ownership of the corporation and we must accept as fact his statement that he was the principal officer and that he and his wife were the sole owners.

■■ ■ As a general rule, "where two tracts of land have a common owner there can be no adverse possession because an owner cannot prescribe against himself." (*Porterfield v. Spurgeon* (La. App. 1979), 379 So. 2d 56, 58.) It is also generally recognized that a court sitting in equity has authority to pierce the corporate veil if to do so would avoid an injustice. (See *State Bank v. Benton* (1974), 22 Ill. App. 3d 1007, 317 N.E.2d 578.) In our opinion, the running of the prescriptive period against a corporation's property during a period when the corporation's principal owner and president mistakenly possessed the encroachment area in his individual capacity defies common sense and is the type of "injustice" that would justify piercing the corporate veil.

■■ Further support for finding that TomDon was merely Woulfe's alter ego is the fact that Woulfe signed the agreement for a warranty deed to lot 6 on May 23, 1964, in his individual capacity. According to his affidavit, he went into possession of lot 6 at that time and continued in possession of the lot until it was conveyed pursuant

to the agreement to TomDon corporation. It is apparent from the lack of formality in transferring Woulfe's individual interest to TomDon that Woulfe's individual and corporate interests were joined. Piercing the corporate veil, we hold the prescriptive period could not have run during Woulfe's ownership of both lots. Woulfe's occupancy of the encroachment area was, as a matter of law, permissive rather than adverse.

Thus, whether under a trustee theory or by "piercing the corporate veil," plaintiff cannot escape the conclusion that adverse possession of the disputed strip was interrupted during that period between 1966 and 1973 when Woulfe and TomDon owned the two lots in question. The judgment of the circuit court of Will County is affirmed.

Affirmed.

STOUDER and HEIPLE, JJ., concur.