956 F.2d 272
 NOTICE: Seventh Circuit Rule 53(b)(2) states unpublished orders shall not be cited or used as precedent except to support a claim of res judicata, collateral estoppel or law of the case in any federal court within the circuit.
In the Matter of CLDC MANAGEMENT CORPORATION, Debtor,
Appeal of Clarence O. GESCHKE and Irene M. Geschke.
 No. 91-1944.
 United States Court of Appeals, Seventh Circuit.
 Argued Jan. 29, 1992.
Decided March 9, 1992.
 
 Before FLAUM and KANNE, Circuit Judges, and PELL, Senior Circuit Judge.
 
 ORDER
 
 1
 Clarence and Irene Geschke, appearing pro se, appeal the district court's grant of summary judgment to LaSalle National Bancorp, Inc., dismissing Bancorp as a party to this action.[1] Bancorp was the parent corporation to another party in this suit, Union Realty Mortgage Company, Inc. (Union).[2] The Geschkes amended their complaint to join Bancorp, alleging that Bancorp exercised control over Union, rendering Bancorp Union's alter ego. The Geschkes also seek to pierce the corporate veil because, they allege, Bancorp fraudulently liquidated Union in order to render Union judgment proof. Bancorp filed a motion for summary judgment, and the district court granted judgment to Bancorp, certifying the order for immediate appeal under Federal Rule of Civil Procedure 54(b).
 
 I. PROCEDURAL POSTURE
 A. The Underlying Lawsuit
 
 2
 Because of the complexity of the procedural background, we, as well as we are able, are setting forth an abridged version of the procedural history. Much of this had to be gleaned from the allegations made by the Geschkes. As these matters have not been resolved, we do not comment on the relative merit of the pending claims.
 
 
 3
 Clarence and Irene Geschke owned property in Woodstock, Illinois, and wished to construct a racquetball club on the land. The Geschkes procured a $375,000 loan from Union Realty Mortgage Company, Inc. As part of the agreement, the Geschkes deeded title to the property to Central National Bank as Trustee. The project, however, could not be completed for $375,000, and Union refused to lend any more money to the Geschkes to finish the construction. The Geschkes found a potential buyer for their interest in the land, and informed Union of this. Nevertheless, in 1978, Union initiated foreclosure proceedings against the Geschkes. The Geschkes sold their interest in the project to Crestwood Land Development Company Management Corporation (CLDC), the Geschkes allege, for a price well below its value.[3] As part of the sale agreement, Union lent CLDC $144,000 for the completion of the project.
 
 
 4
 In 1979, a group of contractors who worked on the construction project obtained mechanics' lien notes to secure payment for their services. In September, 1979, two subcontractors filed lien foreclosure actions in state court against the trust, the Geschkes, Union and CLDC. The Geschkes filed counter-complaints against all the parties. The crux of the Geschkes' claims is that CLDC and Union, through certain of their directors and officers, fraudulently conspired to underfinance the project so the Geschkes would default on the loan and ownership would vest in either CLDC or Union.
 
 
 5
 In November, 1979, while the state court foreclosure actions were pending, CLDC filed a petition for voluntary reorganization under Chapter 11 of the Bankruptcy Code. The district court removed the pending state actions to federal court. In 1985, CLDC, claiming that it no longer had assets to reorganize, dismissed the bankruptcy petition. The Geschkes filed a motion for leave to amend their counter-claims, which was pending at the time the bankruptcy suit was dismissed. The district court allowed the Geschkes to amend their claims, adding several allegations of civil RICO violations. Thus, even though the bankruptcy action was no longer pending, the federal court retained jurisdiction over this suit.
 
 
 6
 CLDC and the Geschkes apparently settled their claims. (R. 7, p. 6) Union became the only real party in interest in the claims initiated by the Geschkes. In 1980, Union decided to stop operating. In 1989, the district court granted the Geschkes leave to amend their counter-complaint to join Bancorp, the parent corporation of Union, as a defendant to this action. The question presented by this appeal is whether the district court erred in granting summary judgment to the defendant, finding that Bancorp was not Union's alter ego and preventing the Geschkes from piercing the corporate veil. The appellants also challenge the district court's decisions concerning discovery.
 
 B. Summary Judgment
 
 7
 On July 5, 1990, Bancorp filed a motion for summary judgment. Two affidavits and 15 exhibits were appended to the motion. On July 24, 1990, the Geschkes responded to this motion. In their response, the Geschkes contended that Bancorp denied their requests for access to documents concerning the relationship between Bancorp and Union. The Geschkes, in their Local Rule 12(m) response to Bancorp's Local Rule 12(l) statements, often denied the facts alleged by Bancorp and stating that they did not have access to information which would enable them to form an opinion on the purported fact. These denials encompass two points: 1) that some of Bancorp's allegations of fact were not supported by documentation and 2) that the Geschkes did not have access to documents which would either support or disprove these claims.[4]
 
 
 8
 The district court orally granted summary judgment to Bancorp on October 4, 1990. The district court found that the Geschkes' denials, claiming insufficient information, did not rebut Bancorp's Rule 12(l) statement, specifically noting the Geschkes' failure to file a motion to compel discovery. On October 10, 1990, the court vacated its judgment, granting the Geschkes time to file a motion for reconsideration and a motion to request the discovery of specific documents. The Geschkes filed a motion for the production of documents on October 22, 1990. Bancorp challenged this request. After holding several hearings and considering the numerous motions filed by the parties in regard to discovery, the district court again entered judgment for Bancorp on April 12, 1991.[5] The Geschkes appeal the district court's determination that Bancorp was entitled to summary judgment as a matter of law.
 
 II. PIERCING THE CORPORATE VEIL
 
 9
 Our review of a grant of summary judgment is de novo. "[O]ur task is to examine the evidence for ourselves, apply the same standard as the district court, ... and determine whether there is no genuine issue of material fact" and whether the moving party is entitled to judgment as a matter of law. Sea-Land Services, Inc. v. Pepper Source, 941 F.2d 519, 521 (7th Cir.1991). We "view the record and all inferences drawn from it in the light most favorable to the party opposing the motion." Rizzo v. Caterpillar, Inc., 914 F.2d 1003, 1006 (7th Cir.1990) (citations omitted).
 
 
 10
 Illinois law determines the test for corporate veil-piercing. [F]irst, there must be such unity of interest and ownership that the separate personalities of the corporation and the individual [or other corporation] no longer exist; and second, circumstances must be such that adherence to the fiction of separate corporate existence would sanction a fraud or promote injustice.
 
 
 11
 Sea-Land Services, 941 F.2d at 520 (quoting Van Dorn Co. v. Future Chemical and Oil Corp., 753 F.2d 565, 569-70 (7th Cir.1985)). See also Lumpkin v. Envirodyne Industries, Inc., 933 F.2d 449, 462 (7th Cir.1991). The determination of whether a corporation is so controlled by another, justifying disregard of the separate identities, focuses on four factors: "(1) the failure to maintain adequate corporate records or to comply with corporate formalities, (2) the commingling of funds or assets, (3) undercapitalization, and (4) one corporation treating the assets of another corporation as its own." Sea-Land Services, 941 F.2d at 521 (quoting Van Dorn, 753 F.2d at 570).[6]
 
 
 12
 The Geschkes claim that the evidence submitted by Bancorp does not resolve all questions of material fact. The appellants argue that some of the statements made by Bancorp in their motion are not supported by the appended evidence. Thus, the Geschkes conclude that the district court's grant of summary judgment to Bancorp is error.[7] A short summary of the undisputed facts will be helpful in analyzing the grant of summary judgment.
 
 A. Undisputed Facts
 
 13
 Bancorp is a bank holding company. In 1972, Bancorp acquired Union, a mortgage banking business, as a wholly-owned subsidiary. On July 14, 1977, Union and the Geschkes entered into the loan agreement for the construction of the racquetball club. In December of 1979, the underlying suit, in which the Geschkes filed the counter-complaint against Union, was initiated.
 
 
 14
 Union's Board of Director's held a meeting on September 29, 1980.[8] The losses sustained by Union in the past year were discussed in the meeting. The Board then adopted a resolution which:
 
 
 15
 authorize[d] and direct[ed] the Chairman of the Company promptly to take such action as is reasonable or desirable in order to terminate the business of the Company and promptly as practicable to proceed with the liquidation of the Company's assets in an orderly manner.
 
 
 16
 Union began to liquidate all of its assets, and by December, 1982, it had transferred all of its assets to Bancorp, except the Izdebski loans and three Union subsidiaries. The three subsidiaries transferred all assets to Union, and Union forgave the debt of the subsidiaries. Union ceased operations following the transfer of assets. Before Union stopped its operations, its offices were located at an address different from that of Bancorp. After operations ceased, (although the exact date is unclear from the record) Union shared its address with the legal department of Bancorp at Bancorp's offices. "Bancorp desired to preserve the Union because it wished to use certain net operating loss carry forwards on its consolidated tax returns." (R. 154) On October 1, 1987, Union merged itself with its three subsidiaries, although the merger had no affect on Union's net worth.
 
 B. Bancorp's Evidence
 
 17
 Bancorp maintains that Union independently complied with corporate formalities. In support of this contention, Bancorp offered the copy of minutes from September, 1980. Bancorp claims that Union still complies with these corporate formalities.[9] Bancorp did not submit other corporate minutes which would prove consistent compliance with corporate formalities.[10] Bancorp also claimed that while Union was an operating company, it prepared separate financial reports. In support of this statement, Bancorp provided certain pages from its 1978 and 1979 Form 10K Reports which listed Union as a subsidiary "for which separate financial statements are filed." Bancorp also provided cover letters from the auditing firm of Ernst & Ernst (later Ernst & Whinney). These letters verify that Union's financial statements fairly represent its financial position. In 1973-75, the letters were addressed to Union's Board of Directors. The cover letters for the years 1976, 1977, 1979 and 1981 are addressed to Bancorp. Finally, Bancorp presented a number of "Inter-Bank Correspondence" and accounting sheets documenting the transfer of assets from Union to Bancorp, with Bancorp immediately selling these assets to another subsidiary, Exchange National Bank. Bancorp explains that these assets were transferred as partial satisfaction of a $1,093,767 debt. Bancorp submitted a copy of an internal memorandum stating that the Comptroller of Currency ordered Union to pay this money to Exchange Bank for a tax benefit that was erroneously assigned to Union, but belonged to its sister corporation.[11] As the parent corporation, Bancorp claims that it was legally obligated to cover the debt.
 
 
 18
 Bancorp contends that there is no evidence that it commingled funds with Union. Bancorp did not, however, submit any evidence, such as either its or Union's accounting ledgers, to establish the absence of a such a financial relationship while Union was a going concern. In the absence of such evidence, it is difficult to determine whether any assets had been commingled or whether Bancorp used Union's assets as its own. The only evidence presented was the accounting summaries reporting the final transfer of assets from Union to Bancorp. As to Union's capitalization, Bancorp relies on the affidavit of Marvin Reynolds, who was Union's president from 1975 until August of 1978. Reynolds stated that in 1978, Union had a net worth of $4,956,00.[12] Reynolds further asserted that the assets were not commingled. Bancorp also used Reynolds' affidavit to support its claim that Bancorp neither paid nor made hiring, firing or promotion decisions regarding Union employees. Finally, Bancorp claims that there is no evidence that it treated Union's assets as its own.[13]
 
 C. The Geschkes' Response
 
 19
 The Geschkes maintain that the evidence of Bancorp's control over Union at least raises a genuine issue of material fact. The Geschkes claim that it was Bancorp, not Union, who decided to cease Union's operations. The Geschkes point to the fact that many of those present at the September 20, 1980 meeting were directors or officers of Bancorp. The Geschkes cite to the prospectus, dated September 29, 1982, provided by CNCC to Exchange International Corp. concerning the two corporations' proposed merger.[14] The Geschkes also rely upon Bancorp's 1981 Form 10K Report which states that Bancorp "recognized a loss of $3,547,000 on September 30, 1980 as a result of its decision to discontinue" Union's operations. This report also classifies Union's assets and liabilities as those of Bancorp. Finally, the report stated that Union's "liquidation" was "largely completed by December 31, 1981." In addition, Bancorp placed $15,000 in Union's checking account in 1985 to cover an overdraft written on Union's checking account. Mr. Theodore Schultz testified in a 1988 deposition that this action was taken to ensure that Union would not go bankrupt, enabling Bancorp to continue to receive tax benefits based on Union's carry-over losses. The Geschkes also note that after CNCC and EIC merged, forming Bancorp, the entity set up a "litigation reserve." This reserve was originally placed only on Bancorp's books to cover the possible expenses of litigation involving any of its subsidiaries.
 
 
 20
 The appellants also challenge Bancorp's assertion that Union controlled its own personnel decisions. In an answer to a set of interrogatories, Union stated that in 1978, Robert Schroeder, who was an employee of Central National Bank, worked at Union on special assignment. Further, Steve Kannistra, testified in a deposition that he was transferred from Central National Bank in 1976 to Union after Central Bank dissolved its real estate department. Kannistra stated that Central Bank paid his salary. Kannistra received a termination notice from the legal department of Central Bank. Evidently, he was terminated for his involvement in the loans that gave rise to the underlying lawsuit. Finally, the Geschkes cite to the deposition testimony of Dennis Kaplan, who worked for Union until 1978:
 
 
 21
 because Central National Bank,[15] was going to bring new people in to [sic] Union Realty.... (Q. So why did you leave?) Central National Bank had brought in a new Chairman and new President. I didn't feel comfortable with the change in management, to get used to new executives after I had been there six years. And I anticipated, and I did not know that the other executives there that I liked would probably feel the same way and be leaving. And as it happened, after I left about a month or two later, they had also left.
 
 
 22
 Finally, the Geschkes point out that Union decided to cease operation shortly after their suit was filed. They argue that this action constituted a continuation of Union's fraud, as alleged in the underlying lawsuit, and that Bancorp, its parent, decided to cease Union's operations in order to make Union judgment-proof.
 
 D. Summary and Analysis
 
 23
 We hold that the grant of summary judgment to Bancorp was inappropriate. The lack of evidence concerning Bancorp's relationship with Union while Union was still a going-concern is the most disturbing.[16] There is little or no evidence presented as to Union's accounts which would either prove or disprove such necessary features as the commingling of assets or the observance of corporate formalities. Indeed, after the transfer of assets, which appear to be properly transferred, Union became little more than a tax write-off for Bancorp. There is no competent evidence that Union still adheres to corporate formality. Instead, the Geschkes presented evidence that such formality no longer exists. The Geschkes also presented evidence suggesting that either Bancorp or Union's sister corporation had a great deal of control over Union's executives while Union was a going concern. We lack sufficient evidence to make a determination as to Union's status before Union began winding down its operations. Following the cessation of business, Union begins to look like an alter ego of Bancorp. In short, Bancorp did not provide enough evidence to meet its burden as the party moving for summary judgment. The Geschkes, on the other hand, identify genuine issues of material fact.
 
 III. DISCOVERY
 
 24
 A great deal of time was spent by the parties filing motions concerning discovery. Again, a somewhat detailed discussion of the proceedings surrounding the discovery motions is helpful in framing the discovery issues. "Our standard of review for the district court's decision not to allow additional pre-trial discovery is abuse of discretion." Olive Can Co., Inc. v. Martin, 906 F.2d 1147, 1152 (7th Cir.1990).
 
 
 25
 The entire discovery question is complicated by the fact that it is unclear from the record what the district court judge intended when he allowed the Geschkes to file the request for production of documents after vacating the grant of summary judgment to Bancorp. At times it appears that the district court allowed the Geschkes to file the request so that they could re-open discovery to obtain any and all evidence relevant to the corporate veil-piercing issue.[17] At other times, the court appeared to limit the discovery question to whether Bancorp (or Union, because Bancorp was not a defendant at the time) turned over all documents that had been requested by the Geschkes' former counsel.[18] The court never directly addressed the Geschkes' contentions that due to former counsel's failure to request some of the pertinent documents, counsel's withdrawal and the subsequent addition of Bancorp as a defendant, they should be allowed to undertake discovery on the veil-piercing issue. Nor did the district court discuss the potential procedural problems, such as the filing of the request after summary judgment was granted or whether the Geschkes' response, in which they repeatedly stated that they could not reply due to lack of discovery, could be treated as complying with Rule 56(f).
 
 
 26
 It is clear from the record, that the Geschkes' counsel made a request and a supplemental request for documents in March, 1980. These requests dealt only with the underlying dispute. Counsel made another request on May 5, 1988.[19] On February 9, 1989, Geschkes filed a Rule 34 request for production of document, which the district court treated a motion to compel. Bancorp challenged the motion contending that discovery had already closed. The district court referred the matter to Magistrate Judge Thomas Rosemond, Jr., who found the request to be untimely as discovery was scheduled to end on May 31, 1988. The Magistrate stated that former counsel must have been satisfied with the document production, for they filed no motions to compel. Finally, the Magistrate found certain requests to be irrelevant, because "[r]elevance is gauged by the violations alleged in the complaint and an assessment of the evidence useful in establishing those allegations." Westinghouse Electric Corp. v. Gulf Oil Corp., 588 F.2d 221, 226 (7th Cir.1978) (R. 99, p. 6 n. 14)[20]
 
 
 27
 To attempt to resolve this discovery dilemma, the district court held a number of hearings. At a hearing on January 9, 1991, one of the Geschkes' former attorneys, Alan Lapidus, testified. The court asked Mr. Lapidus whether the attorneys considered adding Bancorp to the suit, which would affect the document requests made by the attorneys. Mr. Lapidus testified: "[I]t was my view at the time ... that we could postpone consideration of that issue." (TR Vol. 29, p. 12) Mr. Lapidus was of the opinion that the Geschkes could first obtain the judgment against Union, and then go after Bancorp. The attorneys for Bancorp (who are also the attorneys for Union) stated that they believed Bancorp would be added as a defendant. Therefore, in 1988, Attorney Steve Diamond sought to get "every document that shows this relationship [between Bancorp and the Union] ... and that's what I produced." (TR Vol. 29, p. 36) The documents that Bancorp believed to be pertinent fit into nine boxes. In 1990, however, when preparing the motion for summary judgment, Mr. Diamond apparently realized that he needed additional documents, which were neither contained in the nine boxes nor previously produced, to support his motion for summary judgment. Some of these documents were only turned over when the motion for summary judgment was filed, as they were appended to the motion. Senior Vice-President of Exchange National Bank, Mark Nystuen also testified at this hearing. The crux of his testimony is that Bancorp has over 50,000 boxes in storage relating to the finances of Bancorp and its affiliates. Of these boxes, 184 related to Union. (TR 29, p. 43).[21]
 
 
 28
 Bancorp argues that the district court only allowed the Geschkes to amend their counter-complaint with the understanding that no further discovery would be conducted. Discovery was one of Judge Grady's concerns when ruling on the Geschkes' motion to file a fourth amended counter-complaint. The Geschkes sought to amend their complaint on several grounds. First, the Geschkes sought to add two more fraud claims, relating to two other loans from Union for two tracts of land upon which the Geschkes planned to construct buildings. Because these claims would require "[e]xtensive additional discovery," to be undertaken by Union, the court denied leave to amend. (R. 118, p. 16) The district court viewed the addition of Bancorp as a different situation. "Further, there is no undue prejudice here because the new counter-defendants have documents within their possession showing their relationship to Union." (R. 118, P. 20) The district court did not suggest that the documents within Bancorp's possession could not be discovered by the Geschkes.
 
 
 29
 On March 26, 1991, the district court reinstated its grant of Bancorp's motion for summary judgment, and certified the case for immediate appeal pursuant to Fed.R.Civ.P. 54(b). In regard to the discovery issues Judge Grady stated: "[T]he court vacated the Rule 54(b) finding and direction, so that the counter-plaintiff would have an opportunity to conduct discovery concerning the allegations of their motion to vacate the summary judgment. At the conclusion of that discovery, counter-plaintiffs have, in the opinion of the court, been unable to show that Bancorp failed to produce documents that had been requested by counter-plaintiffs or their counsel in discovery and which would have materially assisted counter-plaintiffs in their opposition to the summary judgment motion."
 
 
 30
 There are problems with the district court's handling of these discovery matters. First, as already noted, the district court did not identify the parameters of the discovery proceedings. We cannot discern from the record whether the district court denied the Geschkes' request for further discovery or whether the district court believed that the Geschkes had been granted access to and given all the evidence which was arguably relevant to the corporate veil-piercing issue. The district court seemed to accept Bancorp's assertion that all documents relevant to this issue had been turned over. Yet, the district court failed to recognize that these statements were based upon what Bancorp alone deemed relevant. Bancorp never responded to the document production request filed by the Geschkes following the district court's vacation of judgment in its favor, even though the district court specifically advised Bancorp to respond.[22] Because we cannot determine the basis for the district court's decision on these discovery matters, we must find an abuse of discretion.[23]
 
 CONCLUSION
 
 31
 This case has had a confused and complex procedural history. Our review leads us to conclude that Bancorp failed to produce sufficient evidence to prove their entitlement to summary judgment on the corporate veil-piercing issue. Most conspicuously absent from the record are Union's or Bancorp's accounting sheets, dated before Union ceased operations, which would most clearly demonstrate the type of relationship between Union and Bancorp. In addition, remand is necessary so that the district court can clarify its position and reasoning on the discovery issues. Our holding does not suggest that Bancorp can never prove entitlement to summary judgment. We only conclude that such an entitlement cannot be shown on this record.
 
 
 32
 We also note that the appellants have been litigating on a pro se basis since July 1988, when their previous counsel withdrew. Oral argument on their behalf in the court was delivered by Irene M. Geschke. When it was pointed out to her during argument that the case was a complex one and involved a search of numerous records, a task ill-suited to litigants with no legal background, she responded that she had tried to find legal counsel who would represent them on a contingency basis and had made contact with twenty-eight law firms, none of whom were willing to take on the task of representation. This is understandable as this is a case, as it now stands, in which success is not easy to predict, unlike many in which there are sufficient indicia of success that the resulting judgment is concerned primarily with the amount thereof. It appears to the court that the appellants would be well advised to continue their efforts to secure legal counsel.
 
 
 33
 For these reasons, the decision of the district court is REVERSED and REMANDED for further proceedings in accordance with this order.
 
 
 
 [1]
 Organized as a bank holding company in 1969, Bancorp was originally named Central National Chicago Corporation (CNCC). In 1982, CNCC merged with another company, Exchange International Corporation, and the name was changed to Exchange International Corporation. At the time this corporation was joined in this suit, the name had again been changed to Exchange Bancorp, Inc. Subsequent to becoming a party to this litigation, the corporation underwent one more name change, and is presently known as LaSalle National Bancorp, Inc. In our order, this corporation will be referred to as either "CNCC" or "Bancorp."
 
 
 [2]
 Bancorp owns another subsidiary, which was originally named Central National Bank. The name of Union's sister corporation has since been changed to Exchange National Bank
 
 
 [3]
 The Geschkes claimed that CLDC agreed to pay $100,000 for the Geschkes' interest in the project. Although they transferred their interest, they assertedly received no money in return. The loans, which are the subject of the underlying lawsuit, are now known as the "Izdebski loans."
 
 
 [4]
 In their many filings on this issue, the Geschkes claimed that Union failed to turn over several documents requested by their former counsel in 1988, and that, due to the addition of Bancorp as a party in 1989, many relevant documents had never been requested
 
 
 [5]
 On August 1, 1990, the Geschkes also filed a motion for summary judgment. The district concluded that it need not discuss the Geschkes' motion as much as the evidence relied upon was similar to the evidence presented in the filings on Bancorp's motion
 
 
 [6]
 Many of these factors overlap. Thus, evidence presented on one point may also bear on other factors. Due to this overlap in proof, as well as the confusing posture of this case, we will review the parties' positions, and the evidence presented thereon, rather than undertaking a factor by factor analysis
 
 
 [7]
 The Geschkes' challenge to Bancorp's evidence is closely linked to their arguments concerning discovery (see infra )
 
 
 [8]
 Curiously, even though Bancorp relies on the fact that Union and Bancorp's offices were in different locations, this meeting was held at Bancorp. The Geschkes point out a considerable overlap between the make-up of Union's officers and Board of Directors with that of CNCC (now Bancorp) which, they argue, supports their theory that Union was the alter-ego of Bancorp. Bancorp provided documentation listing the officers and directors of the two entities between the years 1978 and 1982. Our review of this evidence reveals the following about the positions held by those who attended the 1980 Union meeting of the Board of Directors:
 
 
 [1]
 Andre Bial: 1979--Chairman of the Board and Director of Union; 1980--Chairman of the Board and Director of Union, Executive Vice-President, Treasurer and Director of CNCC; 1981--Director of Union until his resignation on 5/1/81;
 
 
 [2]
 Frederick Meyers: 1978-1981-Director of both Union and CNCC; 1982-Director of Union;
 
 
 [3]
 Charles Potter: 1978--Director of both Union and CNCC, Vice President of CNCC; 1979-1981--Director of both Union and CNCC; 1982--Director of Union;
 
 
 [4]
 Jackson Smart, Jr.: 1978-1981--Director of both Union and CNCC, Chairman of the Board, President and CEO of CNCC; 1982--Director of Union;
 
 
 [5]
 John W. Thompson: 1978-1981--Director of Union;
 
 
 [6]
 Thomas S. Vincent: 1978-1981--Director, President and Chief Operating Officer of Union;
 
 
 [7]
 Kenneth Coughlan: 1978-1980--Secretary and General Counsel of CNCC; 1981-1982--Chairman of the Board, President and Director of Union;
 
 
 [8]
 Robert Fahey: 1980--Assistant Treasurer and Director of CNCC; 1981--Treasurer, Chief Financial Officer and Director of CNCC;
 
 
 [9]
 John Suich: 1978-1981--Vice-President of Finance of Union
 
 
 [10]
 Frederick Conze: September 29, 1980-August 23, 1982--Director of Union
 
 
 [9]
 This assertion is belied by the evidence Bancorp presents. Bancorp points to the Nystuen affidavit to support its contention that Union still observes corporate formalities. Nowhere in the affidavit can such a statement be found. Further, Bancorp attaches parts of two Union officers' depositions, taken in May, 1988, to rebut the Geschkes' allegations that Union officers did not even know each other. A reading of these depositions, however, supports the Geschkes' allegations. Both deponents expressed uncertainty when questioned about other Union officers. Although one deponent could name three other officers, he was unsure if there were any directors or any other officers. That deponent, James Thompson, further testified that these "Union officers" were also officers of Exchange Bank. There is nothing in the evidence submitted by Bancorp to demonstrate that any corporate formalities, in terms of corporate meetings, are currently held
 
 
 [10]
 On February 9, 1989, before Bancorp was a defendant in this action and after counsel withdrew, the Geschkes filed a Rule 34 request for production of documents, which the district treated as a motion to compel. (R. 87, 91) In that motion, the Geschkes specifically requested the minutes of board of directors meetings of Bancorp and its predecessors, Union and Union's sister corporation Exchange National Bank (formerly known as Central National Bank). It is unclear whether any other minutes were produced, except one set of minutes, dated February 7, 1980. These minutes were attached to the deposition of Mark Nystuen, who was deposed on February 5, 1991, after the district court initially entered summary judgment in Bancorp's favor
 
 
 [11]
 The origin of this debt is neither adequately documented nor explored. We question whether this mistaken assignment of a tax benefit could be evidence of possible commingling of assets
 
 
 [12]
 The Geschkes challenge Reynolds' competence to submit the affidavit which was dated July 30, 1990. The Geschkes twice took Reynolds' deposition, once in 1980, and again in 1988. Based on the 1988 deposition, a Bancorp attorney reported that Reynolds, a man in his late 70's "is a man now whose memory and mental faculties, I think are somewhat diminished." (TR 10, p. 5) The district court relied, in part, on that statement when ruling on the Geschkes' motion to file a fourth amended counter-complaint. The court noted "Mr. Diamond, counsel for Union, represented at a status conference on November 28, 1989 that two other witnesses have developed serious mental problems that make questionable their ability to testify." (R. 118, p. 15 n. 13). When questioned by the court about the basis of Reynolds' affidavit, Bancorp's counsel stated that he used no documents, but relied on his memory. Not surprisingly, none of Reynolds' statements are backed by any documentation. "Under Rule 56(e), an affiant must be competent to testify and must state specific facts that would be admissible in evidence and are based on the affiant's personal knowledge." National Diamond Syndicate, Inc. v. UPS, 897 F.2d 253 (7th Cir.1990). We question the reliability of this affidavit, particularly in light of the specificity in Reynolds' statement
 The Geschkes also challenge an affidavit submitted by Mark Nystuen, claiming that it is not based upon personal knowledge because he has never been an officer or director of Union. Nystuen was the first Vice-President and Comptroller of National Bank, Bancorp's subsidiary. In his affidavit, Nystuen stated that Bancorp designated him as its representative in this litigation. It appears that Nystuen only reviewed the documents compiled by Bancorp's attorneys when preparing the summary judgment motion. Many of Nystuen's statements are not supported by the exhibits to which he refers, which are appended to Bancorp's motion for summary judgment. Due to this lack of documentation and because of Nystuen's lack of personal knowledge concerning Union's operations, we agree that his affidavit is suspect.
 In light of our holding, we need not decide the admissibility of these affidavits. The district court, however, should make an explicit ruling on the admissibility of this evidence.
 
 
 [13]
 The Geschkes contend that Bancorp did use Union's assets as its own because it pledged Union's stock as collateral to receive a $4 million loan. There was nothing impermissible about Bancorp's actions. As a wholly-owned subsidiary, Bancorp owned all of Union's stock and could use the stock as collateral
 
 
 [14]
 The prospectus stated that "CNCC terminated its activities in mortgage banking when in September, 1980, it announced that its subsidiary,.... [Union], was winding down its business after sustaining increasing losses since the last quarter of 1979.... During May, 1982, CNCC agreed with EIC to dispose of certain properties held by Union Realty. Although terms have not been settled, it is estimated that CNCC will sustain losses approximating $574,000 as a result of such disposition."
 
 
 [15]
 Kaplan refers to Central National Bank as Union's parent
 
 
 [16]
 Union was aware of the Geschkes' lawsuit before its operations ceased. Thus, Union and/or Bancorp should have taken steps to insure the preservation of all pertinent documentation
 
 
 [17]
 At an October 8, 1990, hearing the judge granted the Geschkes 10 days to file a motion asking "for specific documents which you say exist and that the counter-defendants have not turned over to you." (TR 25, p. 14) The judge then directed Bancorp: "[I]f they exist, and they are material to the summary judgment motion, your response will be to get them together. If they don't exist, then that will be your response." (TR 25, p. 15). Similarly, at a hearing held on October 31, 1990, the district court stated:
 I wanted Mrs. Geschke to have every document that could arguably relate to the merits of the summary judgment motion. It was my belief that this was the case at the time I granted the motion.
 If there is any document that exists that is arguably relevant to the question of summary judgment in favor of Bancorp and that document has not been given to Mrs. Geschke, it is my desire that it be given to her now, regardless of the reason that it might not previously have been given to her. (TR 27, pp. 4-5)
 The court advanced similar sentiments at a hearing held on January 9, 1991. (TR 29, pp. 8-9)
 
 
 [18]
 At the January 9, 1990, hearing the judge seems to suggest that he conducted the discovery inquiry only to determine whether Bancorp turned over requested documents, although he does not put a clear time frame on the date of the request. The judge stated:
 Mrs. Geschke, it would be helpful to me to know if you know whether these various items that you're questioning the witness about were, in fact, requested either by Vedder, Price or by you at any time. In other words, if it turns out that there are documents that would be relevant to the summary judgment motion that were not produced, but which were not requested either, that is one problem ... We would have to see what to do about that if that turns out to be the case. Another situation is that documents were requested that exists [sic] and were not produced.... That is a different problem, and it's the one that I'm primarily concerned with, although I'm not foreclosing the relevance, the possible relevance of the second question.
 
 
 [19]
 This request asked for information concerning the merger between CNCC and Exchange International Corporation (Bancorp), a litigation reserve, transfer of assets between Union, Bancorp and Exchange Bank (the sister bank), the source of any obligations Union owed Bancorp, and Union's checking account, and information about any person or entity responsible for the debts or obligations of Union
 It appears that not all of this documentation was turned over. The Geschkes only received checking account statements for the years 1984-88. Further, Bancorp only identified one instance, within the 16 years after acquiring Bancorp, in which Union became indebted to Bancorp. That debt arose from the erroneous assignment of the tax benefit, which has already been discussed. No documentation of other sources of obligations, (for example loans from Bancorp to Union) appear to have been produced.
 While some of this information is pertinent to the issue of piercing the corporate veil, most of the questions posed by the Geschkes' former counsel appear to address only the current status of Union's assets and whether any entity has a contractual obligation to cover Union's debts. On July 13, 1988, shortly after this letter was sent to Bancorp, counsel withdrew.
 
 
 [20]
 Some of the information requested by the Geschkes in their February 1989 motion, such as Union correspondence, the employment records of Union's officers and employees, and the minutes form director's meetings for Union, Bancorp and Exchange Bank, are relevant to the veil-piercing question. The counter-complaint, however, was not amended to add Bancorp as a defendant until December of 1989, making some of the requests appear irrelevant to the complaint as it appeared in February of 1989
 
 
 [21]
 Nystuen also testified that our of these 184 boxes, only three boxes were examined in connection with the preparation of the motion for summary judgment. This statement casts doubt on the statement in his affidavit attached to the motion for summary judgment that he "reviewed all material intercorporate transfers between Union and Bancorp beginning in 1978 and for all subsequent years." (R. 154) Nystuen never stated the basis of his knowledge concerning this documentation (i.e. whether he is a records custodian)
 
 
 [22]
 Our review of the Geschkes' request leads to the conclusion that they sought many documents which would be relevant to the question of Union and Bancorp's relationship. Indeed, they requested many of the documents which, in our opinion, Bancorp should have submitted in support of their motion. Many of the Geschkes' requests are overly broad. However, Bancorp could have specifically objected to these requests
 
 
 [23]
 The Geschkes further allege that Bancorp is responsible for Union's liabilities pursuant to the Bank Holding Company Act of 1956, 12 U.S.C. §§ 1841 et seq. and 12 C.F.R. §§ 225.1 et seq. Bancorp correctly points out that the Geschkes raised this contention for the first time in their motion for reconsideration dated October 24, 1990. Bancorp argues that they have waived this claim for failing to raise it earlier in the proceedings. The district court never commented on this claim. Considering our holding in this case, we need not decide this issue