993 F.2d 1309
 SEA-LAND SERVICES, INCORPORATED, Appellee,
v.
PEPPER SOURCE, Caribe Crown, Incorporated, Gerald Marchese,
doing business as Jamar Corporation, doing
business as Salescaster Distributors,
Incorporated, et al., Appellants.
 No. 92-2773.
 United States Court of Appeals,
Seventh Circuit.
 Argued March 29, 1993.
Decided May 21, 1993.
Rehearing and Rehearing
En Banc Denied June 24, 1993.
 
 Ronald D. Menna (argued), Oak Brook, IL (Aldo E. Botti, Frank J. Wesolowski, and Botti, Marinaccio & Tameling, Ltd., on the brief), for appellants.
 Sandra M. Kelly (argued), Cleveland, OH (Theodore C. Robinson, and Ray, Robinson, Carle, Davies & Snyder, Cleveland, OH and Chicago, IL, on the brief), for appellee.
 Before BAUER, Chief Judge, ROVNER, Circuit Judge, and TIMBERS, Senior Circuit Judge.*
 TIMBERS, Senior Circuit Judge.
 
 
 1
 Appellants appeal from a judgment entered after a bench trial in the Northern District of Illinois, James F. Holderman, District Judge, piercing the corporate veil and awarding appellee $118,132.61 in damages.
 
 
 2
 On appeal, appellants claim that the evidence presented at trial was insufficient to warrant piercing the corporate veil and that the court misapplied state law in reaching its conclusion.
 
 
 3
 For the reasons which follow, we reject appellants' claims and we affirm the judgment in all respects.I.
 
 
 4
 We summarize only those facts and prior proceedings believed necessary to an understanding of the issues raised on appeal.
 
 
 5
 Appellee Sea-Land Services, Inc. (Sea-Land), an ocean carrier, shipped Jamaican sweet peppers for appellant Pepper Source (PS) over a period of several months in 1986 and 1987. When PS failed to pay Sea-Land for its services, Sea-Land commenced an action in the federal court. On December 2, 1987, Sea-Land obtained a default judgment against PS in the amount of $86,767.70. Sea-Land however, was unable to collect its judgment because PS had been dissolved in mid-1987 and had no assets.
 
 
 6
 On June 13, 1988, Sea-Land commenced the instant action against Gerald J. Marchese and five business entities owned by Marchese: PS, Caribe Crown, Inc., Jamar Corp., Salescaster Distributors, Inc., and Marchese Fegan Associates. The complaint sought to enforce the December 2, 1987 default judgment by piercing PS's corporate veil to hold Marchese personally liable for the judgment owed to Sea-Land. In a process referred to as "reverse piercing", Sea-Land Serv., Inc. v. Pepper Source, 941 F.2d 519, 520 (7th Cir.1991), Sea-Land then sought to impose liability on Marchese's other corporations as well. After the court granted leave for Sea-Land to amend its complaint nunc pro tunc as of January 10, 1989, Sea-Land added Tie-Net International, Inc., a corporation half-owned by Marchese, as a defendant.
 
 
 7
 On December 8, 1989, Sea-Land moved for summary judgment. On June 22, 1990, the court granted Sea-Land's motion. Appellants appealed and, on August 20, 1991, we reversed and remanded. Sea-Land, supra. Applying the two-prong test for piercing the corporate veil articulated in Van Dorn Co. v. Future Chem. and Oil Corp., 753 F.2d 565 (7th Cir.1985), we concluded that the first prong was satisfied because Sea-Land demonstrated that there was such a unity of interest and ownership that the separate personalities of the corporations and Marchese no longer existed. Sea-Land, supra, 941 F.2d at 521-22. As to the second prong, however, we remanded because Sea-Land's failure to present evidence to support a finding that adherence to a separate corporate existence would promote fraud or injustice. Id. at 524. To satisfy this second prong, we concluded, Sea-Land must establish on remand some "wrong" beyond its inability to collect on its judgment against PS.
 
 
 8
 On remand, additional discovery was permitted. The issues raised by the second prong of Van Dorn were tried on July 6 and 7, 1992. On July 9, 1992, the court entered judgment for Sea-Land, awarding it $118,132.61 in damages. The court concluded that Sea-Land satisfied the second prong of Van Dorn by establishing wrongs beyond its inability to collect on its judgment.
 
 
 9
 On the instant appeal, appellants contend that the evidence presented by Sea-Land at trial was insufficient to satisfy the second prong of Van Dorn. They also assert that the court misapplied Illinois law in reaching its decision.
 
 II.
 
 10
 To pierce a corporate veil under Illinois law, a plaintiff must demonstrate that there is "such unity of interest and ownership that the separate personalities of the corporation and the individual no longer exist", and that "adherence to the fiction of separate corporate existence would sanction a fraud or promote injustice." Van Dorn, supra, 753 F.2d at 569-70. In this case, we are concerned only with the latter requirement which appellants contend Sea-Land failed to satisfy.
 
 
 11
 To determine whether Sea-Land satisfied its burden, we first look to our earlier decision in this case. In Sea-Land, supra, 941 F.2d at 524, we held that, to prevail on the second prong of Van Dorn, Sea-Land must establish, in addition to its inability to collect on its judgment, a "wrong" such as where:
 
 
 12
 "the common sense rules of adverse possession would be undermined; former partners would be permitted to skirt the legal rules concerning monetary obligations; a party would be unjustly enriched; a parent corporation that caused a sub's liabilities and its inability to pay for them would escape those liabilities; or an intentional scheme to squirrel assets into a liability-free corporation while heaping liabilities upon an asset-free corporation would be successful."
 
 
 13
 We went on to suggest that such "wrongs" could be shown by Sea-Land on remand if "Marchese ... used these corporate facades to avoid its responsibilities to creditors; or that PS, Marchese or one of the other corporations will be 'unjustly enriched.' " Id. at 525.
 
 
 14
 As a threshold matter, appellants contend that Sea-Land did not produce evidence between summary judgment and trial to establish a wrong other than its inability to collect on its judgment, and therefore did not satisfy the second prong of Van Dorn. As we recognized in Sea-Land, supra, 941 F.2d at 524, the only reason Sea-Land did not present such evidence on summary judgment was because it believed its unsatisfied judgment was sufficient ground for piercing the corporate veil. At trial, however, Sea-Land did present new evidence pertaining to the additional wrongs listed above. Indeed, accountants testifying on Sea-Land's behalf relied on bank records and personal financial statements obtained between summary judgment and trial to support their testimony that Marchese was unjustly enriched and that he used his corporations as a sham to defraud creditors.
 
 
 15
 Further, contrary to appellants' assertions, Sea-Land adduced sufficient evidence at trial to establish additional wrongs to justify piercing the corporate veil. First, Sea-Land demonstrated that Marchese and his corporations were unjustly enriched. We have defined "unjust enrichment" as the receipt of money or its equivalent under circumstances that, in equity and good conscience, suggest that it ought not to be retained because it belongs to someone else. Midcoast Aviation, Inc. v. General Elec. Credit Corp., 907 F.2d 732, 737 (7th Cir.1990). At trial, Sea-Land demonstrated that Marchese obtained countless benefits at the expense of not only Sea-Land, but the Internal Revenue Service (IRS) and other creditors as well. Indeed, Marchese used PS funds to pay his personal expenses as well as expenses incurred by his other corporations. As a result, PS was left without sufficient funds to satisfy Sea-Land or PS's other creditors. American Trade Partners v. A1 Int'l Importing Enter., 770 F.Supp. 273, 278 (E.D.Pa.1991) (corporate veil pierced on basis of unjust enrichment where managing shareholder, with knowledge of debt to creditor, used corporation's funds to pay personal expenses). Since Marchese was enriched unjustly by his intentional manipulation and diversion of funds from his corporate entities, to allow him to use these same entities to avoid liability "would be to sanction an injustice." Gromer, Wittenstrom & Meyer, P.C. v. Strom, 140 Ill.App.3d 349, 354, 95 Ill.Dec. 149, 153, 489 N.E.2d 370, 374 (1986).
 
 
 16
 Sea-Land also satisfied the second prong of Van Dorn by demonstrating at trial that Marchese used his corporate entities as "playthings" to avoid his responsibilities to creditors. An accountant testified that Marchese's payment of personal expenses with corporate funds enabled those corporations to avoid their monetary obligations to vendors, creditors, and federal and state tax authorities. One example was Marchese's withdrawal of $19,000 as salary from Jamar Corporation. This withdrawal rendered Jamar insolvent and thus unable to satisfy liabilities in excess of $450,000. Marchese also frequently took "shareholder loans" from the corporations to pay personal expenses, leaving the corporations with insufficient funds to satisfy liabilities as they became due. Further, a tax accountant testified that Marchese's business practices were replete with illegal transactions. Indeed, as we previously recognized, "for years Marchese flagrantly has disregarded the tax code concerning the treatment of corporate funds." Sea-Land, supra, 941 F.2d at 522 n. 2.
 
 
 17
 Marchese's practice of avoiding liability to Sea-Land and other creditors by insuring that his corporations had insufficient funds with which to pay their debts, is ground for piercing the corporate veil. Van Dorn, supra, 753 F.2d at 572-73 (piercing of corporate veil allowed where subsidiary was stripped by parent corporation of its assets and rendered insolvent to the prejudice of creditor). Further, as the district court here properly recognized, Marchese was the "dominant force" behind all of the corporations and was responsible for the manipulation and diversion of corporate funds without regard for creditors or the law. B. Kreisman & Co. v. First Arlington Nat'l Bank, 91 Ill.App.3d 847, 47 Ill.Dec. 757, 415 N.E.2d 1070 (1980) (piercing corporate veil proper where defendant was the dominant force behind corporation). On the basis of the facts adduced at trial, the court properly concluded that Sea-Land satisfied the second-prong of Van Dorn and therefore was entitled to pierce the corporate veil.
 
 
 18
 To support their claim that the court misapplied Illinois law to justify piercing the corporate veil, appellants seek to rely on Torco Oil Co. v. Innovative Thermal Co., 763 F.Supp. 1445 (N.D.Ill.1991) (Posner, C.J., sitting by designation). They contend that Torco prohibited the court from piercing the corporate veil solely because defendants defrauded the IRS. Torco, however, is distinguishable because the court here did not rely solely on Marchese's tax violations to justify piercing the corporate veil. The court also relied on Marchese's defrauding creditors of his various corporations. Further, Torco also is distinguishable because it involved a "close case" of fraud, whereas in the instant case Marchese's fraudulent conduct was "blatant."
 
 
 19
 Appellants further assert that Sea-Land fails to satisfy the requirement that a nexus exist between its injuries and the fraud or injustice committed by appellants. South Side Bank v. T.S.B. Corp., 94 Ill.App.3d 1006, 50 Ill.Dec. 369, 419 N.E.2d 477 (1981). This claim fails, however, in view of the fact that Marchese assured Sea-Land in 1987 that it would receive payment from PS as long as there were sufficient funds. The court's findings that Marchese knew at that time that he would manipulate the funds of PS so as to insure that Sea-Land would not be paid, and that he eventually did manipulate those funds, were not clearly erroneous. Since Marchese's intentional and improper financial maneuvering caused Sea-Land's inability to collect on its default judgment, the required nexus existed here.
 
 III.
 To summarize:
 
 20
 We hold that the evidence presented at trial was sufficient to support piercing the corporate veil. We also hold that the court properly applied Illinois law in reaching its decision.
 
 
 21
 AFFIRMED.
 
 
 
 *
 The Honorable William H. Timbers, Senior Circuit Judge, United States Court of Appeals for the Second Circuit, sitting by designation