**BLAGUSS TRAVEL INTERNATIONAL,** an Austrian corporation; and International Travel Marketing Services, an Austrian corporation, Plaintiffs,

v.

**MUSICAL HERITAGE INTERNATIONAL,** an Illinois corporation; John W. Gibbs and James M. Gibbs, individuals; Trans World Travel, an Illinois corporation; and Gibbs Partnership, an Illinois partnership, Defendants.

No. 92 C 1138.

United States District Court, N.D. Illinois, E.D.

Sept. 24, 1993.

Beverly Susler Parkhurst, J. Michael Williams, William Alan Buzogany, Holleb & Coff, Chicago, IL, for plaintiffs.

Michael R. Turoff, Laurence H. Kallen, Bruce H. Balonick, Deborah H. Shefrin, Arnstein & Lehr, Chicago, IL, for defendants.

## MEMORANDUM OPINION AND ORDER

HOLDERMAN, District Judge:

Defendants Musical Heritage International ("MHI"), John & James Gibbs ("Gibbs"), Trans World Travel ("TWT"), and Gibbs Partnership ("GP") move for summary judgment on Counts I–IV, VI and VII of plaintiffs' complaint. Plaintiffs Blaguss Travel International ("Blaguss") and International Travel Marketing ("International") move for summary judgment on Count V and partial summary judgment on Counts I–IV. Defendants' motion is denied. Plaintiffs' motion is denied.

### BACKGROUND

The case pertains to the business relationship between MHI and the plaintiffs, which consisted of providing music related tours in Europe. The relationship ran from approximately 1986 or early 1987 to June 21, 1991, when MHI, which had stopped paying its bills and became "insolvent," ceased operations. (Complaint, ¶¶ 11, 17, 18, 19). When MHI ceased operating, it owed Blaguss approximately $190,000 and International $43,600. (Complaint, ¶¶ 14, 16).

Plaintiffs filed a seven count complaint:

Count I—seeks an injunction, pursuant to the Illinois Fraudulent Transfer Act ("Act"), against further transfers of MHI property to defendants;[1]

Count II—seeks an accounting for the property transferred;

Count III—seeks an avoidance of the transfers to the extent necessary to satisfy the plaintiffs' claims;

---

1. Counts I–IV of the complaint are based on the Illinois Fraudulent Transfer Act, 740 ILCS 160 *et seq.* (formerly Ill.Rev.Stat. ch. 59, ¶ 101 *et seq.*)

Count IV—seeks a judgment under the Act and punitive damages against the defendants;

Count V—seeks judgment on the basis of an account stated against MHI;

Count VI—alleges intentional interference with existing contracts against Gibbs, TWT and GP;

Count VII—alleges interference with prospective business relationships against Gibbs, TWT and GP. (Complaint, Counts I–VII.)

In essence, plaintiffs maintain there was a fraudulent transfer of property from the allegedly insolvent debtor, MHI, to Gibbs, TWT and GP, which was fraudulent as to creditors Blaguss and International. Plaintiffs maintain no consideration was paid for the property, which included executory contracts, customer lists, office furniture, and office equipment. (Complaint, ¶¶ 22–29).

Plaintiffs also maintain that defendants induced MHI to break its contracts with plaintiffs, and to transfer its existing business to TWT. TWT then allegedly contracted with other tour operators to provide the services to MHI customers that Blaguss and International had contracted to provide to MHI's customers. The Gibbs brothers are officers and shareholders in both MHI and TWT.

Defendants initially filed a motion to dismiss Counts I–IV, VI and VII of the complaint. Because the defendants submitted significant materials beyond the pleadings, this court ordered the motion be deemed a motion for summary judgment. (Minute Order of Feb. 5, 1993). Supplementary materials were submitted by the parties, including plaintiffs' cross-motion for summary judgment.

### ANALYSIS

Under Rule 56(c), summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). In ruling on a motion for summary judgment the evidence of the non-movant must be believed, and all justifiable inferences must be drawn in the non-movant's favor. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 255, 106 S.Ct. 2505, 2513, 91 L.Ed.2d 202 (1986). This court's function is not to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial.

### A. Counts I–IV: Illinois Fraudulent Transfer Act

Plaintiffs maintain that the transfers from MHI to the other defendants were wrongful under the Illinois Fraudulent Transfer Act, particularly under 740 ILCS 160/5 and 740 ILCS 160/6.

160/5. Transfer or obligation fraudulent as to creditor-Claim arising before or after transfer

§ 5. (a) A transfer made or obligation incurred by a debtor is fraudulent as to a creditor, whether the creditor's claim arose before or after the transfer was made or the obligation was incurred, if the debtor made the transfer or incurred the obligation:

(1) with actual intent to hinder, delay, or defraud any creditor of the debtor; or

(2) without receiving a reasonably equivalent value in exchange for the transfer or obligation, and the debtor:

(A) was engaged or was about to engage in a business or a transaction for which the remaining assets of the debtor were unreasonably small in relation to the business or transaction; or

(B) intended to incur, or believed or reasonably should have believed that he would incur, debts beyond his ability to pay as they became due.

(b) In determining actual intent under paragraph (1) of subsection (a), consideration may be given, among other factors, to whether:

(1) the transfer or obligation was to an insider;

(2) the debtor retained possession or control of the property transferred after the transfer;

(3) the transfer or obligation was disclosed or concealed;

(4) before the transfer was made or obligation was incurred, the debtor had been sued or threatened with suit;

(5) the transfer was of substantially all the debtor's assets;

(6) the debtor absconded;

(7) the debtor removed or concealed assets;

(8) the value of the consideration received by the debtor was reasonably equivalent to the value of the asset transferred or the amount of the obligation incurred;

(9) the debtor was insolvent or became insolvent shortly after the transfer was made or the obligation was incurred;

(10) the transfer occurred shortly before or shortly after a substantial debt was incurred; and

(11) the debtor transferred the essential assets of the business to a lienor who transferred the assets to an insider of the debtor.

740 ILCS 160/5.

160/6. Transfer or obligation fraudulent as to creditor-Claim arising before the transfer

§ 6 (a) A transfer made or obligation incurred by a debtor is fraudulent as to a creditor whose claim arose before the transfer was made or the obligation was incurred if the debtor made the transfer or incurred the obligation without receiving a reasonably equivalent value in exchange for the transfer or obligation and the debtor was insolvent at that time or the debtor became insolvent as a result of the transfer or obligation.

(b) A transfer made by a debtor is fraudulent as to a creditor whose claims arose before the transfer was made if the transfer was made to an insider for an antecedent debt, the debtor was insolvent at that time, and the insider had reasonable cause to believe that the debtor was insolvent.

740 ILCS 160/6.

The relevant definitions are provided in 740 ILCS 160/2:

160/2. Definitions

§ 2. As used in this Act:

\* \* \* \* \* \*

(b) "Asset" means property of a debtor, but the term does not include:

(1) property to the extent it is encumbered by a valid lien;

(2) property to the extent it is generally exempt under the laws of this State; or

(3) an interest in property held in tenancy by the entireties to the extent it is not subject to process by a creditor holding a claim against only one tenant.

(c) "Claim" means a right to payment, whether or not the right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured, or unsecured.

(d) "Creditor" means a person who has a claim.

(e) "Debt" means liability claim.

(f) "Debtor" means a person who is liable on a claim.

(g) "Insider" includes:

\* \* \* \* \* \*

(2) if the debtor is a corporation,

(A) a director of the debtor;

(B) an officer of the debtor;

(C) a person in control of the debtor;

(D) a partnership in which the debtor is a general partner;

(E) a general partner in a partnership described in clause (D); or

(F) a relative of a general partner, director, officer, or person in control of the debtor;

\* \* \* \* \* \*

(1) "Transfer" means every mode, direct or indirect, absolute or conditional, voluntary or involuntary, of disposing of or parting *with an asset or an interest in an asset,* and includes payment of money, release, lease, and creation of a lien or other encumbrance.

740 ILCS 160/2 (emphasis added).

Defendants argue that they are entitled to summary judgment on Counts I–IV for several reasons:

1) the executory contracts are not "assets" because they had no set "value" at the time of transfer, citing *In re Chester Woodworking, Inc.*, 56 B.R. 711 (Bankr. E.D.Pa.1986);

2) the customer lists were not "transferred", as defendants always had free access to them;

3) there was no transfer of the office equipment and furniture, as the defendants have made no claims of ownership and are merely "warehousing" them.

(Defendants' Memorandum in Reply, pp. 2–7).

Plaintiffs maintain that they are entitled to summary judgment as to liability on Counts I–IV, as the defendants took the executory contracts, customer lists, and office property of MHI without paying *any* consideration for them. (Plaintiffs' Memorandum in Support of Their Counter Motion for Summary Judgment, pp. 1–2).

While there is little doubt that the plaintiffs are "creditors" of MHI, that MHI was a "debtor" and likely insolvent, and that the Gibbs were "insiders," some questions remain. There is an issue of material fact as to whether an "asset" was "transferred" for each of the three types of property that allegedly went from MHI to the defendants.

As to the office furniture and equipment, the parties competing accounts warrant resolution by a trier of fact. Plaintiffs insist that the defendants stripped MHI of its office furniture and equipment and put it to their own use. Defendants assert that they merely "warehoused" the property. While there is no doubt furniture and equipment are assets, there is an issue of fact as to whether the office property was "transferred."

The customer lists also present an issue of fact as to whether a "transfer" occurred. While both sides seem to agree that the customer lists were the property of MHI, they disagree how much access the defendants legitimately had to MHI's lists.[2]

The most difficult issue involves the executory contracts; plaintiffs and defendants disagree as to whether such contracts can be deemed "assets" under the Act.

The case emphasized by both sides is *In re Chester Woodworking, Inc.*, 56 B.R. 711 (Bankr.E.D.Pa.1986). The issue in *Chester* was whether executory contracts transferred by the debtor to a third party were transferred fraudulently under Pennsylvania's Uniform Fraudulent Conveyance Act because they were transferred without fair consideration. *Id.* at 712. The court concluded that even though no consideration was provided for the contracts, the debtor failed to prove lack of fair consideration. *Id.* The court in *Chester* stated that such contracts "differ from many types of tangible property in that contracts may have a potential to make money or to lose it, and thus lack the sort of 'value' that inheres in more concrete types of personalty." *Id.* The court found it difficult to infer that the contracts' value at transfer was equivalent to the amount of profit eventually generated by the contracts; the profit was only realized after several months of significant work by the transferee. *Id.*

Defendant asserts that *Chester* stands for the proposition that executory contracts have no "value," thus are not "assets," as a matter of law. Defendants believe the executory contracts were, in effect, liabilities of MHI, as they represented obligations MHI would have been required to perform.

This court concludes that *Chester* stands for the proposition that whether a particular executory contract is an "asset" with "value" is a question of fact. While the *Chester* contracts could only turn a profit after significant expenditure of time and resources, it is not difficult to imagine executory contracts that could provide the debtor with a steady cash flow with limited expenditure of effort and resources. This is especially significant given that the plaintiffs have accused the defendants of "cherry picking" the contracts—selecting those that would be the most profitable for the least effort.

**2.** A difficulty here is the apparently lax adherence to corporate formalities in these closely-held entities by the owners. TWT and GP are owned by the Gibbs. MHI is 50% owned by the Gibbs and 50% by Mr. Kevin Kelly.

While the case law is very limited on this point, as noted by the parties, this court's view is in conformity with two other courts that have addressed similar issues. *Chicago Truck Drivers Pension Fund v. L. Zahn Drug,* 890 F.2d 1405 (7th Cir.1989); *Geyer v. Ingersoll Publications Co.,* 621 A.2d 784 (Del.Ch.1992).

*Chicago Truck Drivers* dealt with withdrawal liability under the Multiemployer Pension Plan Amendments Act, 29 U.S.C. § 1392. The Seventh Circuit was called upon to decide whether the transfer of truck leases was a "bona fide sale of assets" or an attempt to "evade or avoid liability" to a plan. *Id.* at 1412. The court concluded that examining the transaction as a whole was appropriate, because, while assuming the leases lead to liability being incurred by the transferee, they still had "value to the purchaser" in the scope of the business. *Id.* Similarly, the Delaware Court, in *Geyer v. Ingersoll Publications,* held that the cancellation of management agreements violated the Delaware Fraudulent Conveyances Act, as they were "assets" which could provide cash flow to the debtor. 621 A.2d at 791–92.

This court concludes that it is an issue of material fact as to whether the particular executory contracts transferred in this case were valuable assets at the time of transfer.

### Count V—Statement of Account

■ There remain issues of material fact that preclude summary judgment on this count. This conclusion is in large part required by the ambiguity in the underlying correspondence and the presence of illegal activities between the corporations and their officers. These illegal activities are discussed in the next section.

### Counts VI & VII—Interference with Contract and Interference with Prospective Economic Advantage

■ The overlapping relationships between the relevant business entities and individuals create a good deal of the difficulty in this case. The Gibbs brothers and Mr. Kelly

were the officers and shareholders of MHI. The Gibbs brothers are also the owners of GP and TWT. As is often the case with such closely held entities, there are indications that full corporate formalities may not have been observed at all times.[3] Further, criminal activity has occurred regarding these entities, as Mr. Kelly has been convicted of two counts of theft from MHI and had been indicted for theft from the Gibbs. (Plaintiffs' Memorandum in Support of Their Counter Motion for Summary Judgment, p. 3 n. 3). Plaintiffs have alleged the Gibbs have been engaged in similar self-dealing.

■ As to Count VI, this court concludes that there remain issues of material fact. The gist of plaintiffs' claim is that defendants engaged in self-dealing regarding MHI's assets and induced MHI to breach its contracts as part of the scheme.

As for Count VII, interference with prospective business relationships, the question of whether there are issues of material fact is closer.

■ The elements of tortious interference with a prospective contractual relationship are: 1) the plaintiff has a reasonable expectation of entering into a valid business relationship; 2) the defendant has knowledge of plaintiff's expectations; 3) purposeful interference by the defendant then prevents the plaintiff's expectations from being fulfilled; and 4) damages to the plaintiff resulting from the defendant's interference. *Delloma v. Consolidation Coal Company,* 996 F.2d 168, 170–171 (7th Cir.1993). Defendants argue that no such action can be maintained as MHI has ceased operating.

■ The defendants have not cited any cases indicating an action cannot be brought regarding prospective business advantage with a company that has ceased operations. As plaintiffs' arguments to some degree focus on the propriety by which MHI went out of business, summary judgment on this issue is inappropriate at this time.

---

3. This court notes that where the individual proprietors and the corporation cease to function in good faith separateness of identity, the corporate veil can be pierced. *Sea–Land Services, Inc. v. Pepper Source,* 993 F.2d 1309, 1311 (7th Cir. 1993).

## CONCLUSION

For the reasons stated above, defendants' motion for summary judgment is DENIED, and plaintiffs' motion for summary judgment is DENIED. The parties are strongly urged to discuss settlement of the case.