NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

_____

No. 14-4595

_____

QVC, INC.,

Appellant

v.

OURHOUSE WORKS, LLC; ENVIROX, LLC;
JOHN DOES 1-10

_____

On Appeal from the United States District Court
for the Eastern District of Pennsylvania
(D.C. Civ. No. 2:12-cv-02871)
District Judge:  Honorable Ronald L. Buckwalter

_____

Submitted under Third Circuit LAR 34.1(a)
on November 6, 2015

Before: FUENTES, JORDAN, and VANASKIE, <u>Circuit Judges</u>

(Filed May 6, 2016)

_____

OPINION[*]

_____

FUENTES, <u>Circuit Judge.</u>

_____

[*] This disposition is not an opinion of the full Court and pursuant to I.O.P. 5.7 does not
constitute binding precedent.

Plaintiff QVC, Inc. ("QVC") appeals the District Court's entry of judgment in favor of defendant EnvirOx LLC ("EnvirOx") on QVC's vicarious liability and unjust enrichment claims. For the following reasons, we will vacate the District Court's judgment and remand for further proceedings.

## I.

The District Court found the following facts after a bench trial.[1] Plaintiff QVC is a general merchandise retailer that markets products through direct response television programming and the internet. At the time of suit, defendants OurHouseWorks, LLC ("OurHouse") and EnvirOx were ostensibly separate Illinois corporations that manufactured and sold consumer products, including household and commercial cleaning products. Although separately incorporated, the companies were closely related such that OurHouse functioned as a "division" or "product line" of EnvirOx.

In early 2008, QVC issued four Purchase Orders to OurHouse for the purchase and delivery of various household cleaning kits. The Purchase Orders gave QVC the right to return to OurHouse any merchandise sold by QVC that (1) was subsequently returned to QVC by its retail customers for any reason, or (2) failed to meet QVC's quality control tests. The Purchase Orders further obligated OurHouse to refund to QVC all payments made for returned or substandard merchandise. QVC paid OurHouse for the kits;

---

[1] *See QVC, Inc. v. OurHouseWorks, LLC*, No. 12-cv-2871, 2014 U.S. Dist. LEXIS 152040 (E.D. Pa. Oct. 27, 2014).

2

OurHouse delivered the kits to QVC; and QVC began marketing the kits on its television programs in the spring of 2008.

Thereafter, QVC returned to OurHouse certain batches of merchandise that had either failed to meet QVC's quality standards or had been returned by retail customers. QVC demanded a refund for this merchandise and for other merchandise that had been returned to QVC by retail customers but not yet delivered to OurHouse. OurHouse refused to pay. OurHouse subsequently ceased business operations in early 2009 before formally dissolving in October 2010; EnvirOx, however, remains in business. In 2012, QVC brought suit against OurHouse and EnvirOx for breach of contract and unjust enrichment, alleging, *inter alia*, that EnvirOx controlled OurHouse and was therefore liable for its debts.

Following a bench trial, the District Court ruled that OurHouse had breached its contracts with QVC, and ordered OurHouse to pay QVC $204,368, inclusive of interest. But the District Court also ruled that QVC could not pierce the corporate veil between EnvirOx and OurHouse, and therefore entered judgment for EnvirOx on QVC's vicarious liability claim. The court further held that because the relationship between QVC and EnvirOx was founded on a contract, QVC was legally prohibited from bringing its unjust enrichment claim against EnvirOx. The result of the District Court's rulings was that QVC could not recover its breach of contract damages against anyone able to pay. QVC now appeals the veil-piercing and unjust-enrichment rulings.

3

## II.

The District Court had jurisdiction over this diversity action under 28 U.S.C. § 1332, and we have jurisdiction under 28 U.S.C. § 1291. Because this case was originally brought in the Eastern District of Pennsylvania, we apply Pennsylvania's choice-of-law rules to determine which state's law to apply.[2] In Pennsylvania, "the first question to be answered in addressing a potential conflict of laws dispute is whether the parties explicitly or implicitly have chosen the relevant law."[3] Although the parties cite both Illinois and Pennsylvania law, they appear to agree that the issues presented in this appeal are governed by Illinois law.[4]

We review a district court's findings of fact following a bench trial for clear error.[5] We exercise plenary review over the court's conclusions of law,[6] including its "choice and interpretation of legal precepts."[7]

## III.

This case seems to present straightforward claims and issues. QVC had a contract with OurHouse; OurHouse breached the contract; and then OurHouse went bankrupt and

---

[2] *Budget Rent-A-Car Sys., Inc. v. Chappell*, 407 F.3d 166, 169 (3d Cir. 2005).

[3] *Assicurazioni Generali, S.P.A. v. Clover*, 195 F.3d 161, 164 (3d Cir. 1999) (citing *Smith v. Commonwealth Nat'l Bank*, 557 A.2d 775, 777 (Pa. Super. Ct. 1989) and Restatement (Second) Conflict of Laws § 187 (1971)).

[4] *See* Opening Br. 13 (Illinois law "governs QVC's claim"); Response Br. 35 ("The parties agree that Illinois law applies.").

[5] *Am. Soc'y for Testing & Materials v. Corrpro Cos.*, 478 F.3d 557, 566 (3d Cir. 2007).

[6] *Kosiba v. Merck & Co.*, 384 F.3d 58, 64 (3d Cir. 2004).

[7] *Blasband v. Rales*, 971 F.2d 1034, 1040 (3d Cir. 1992).

dissolved. Because QVC cannot recover contract damages from OurHouse, it now seeks to recover from OurHouse's parent company, EnvirOx. It does so by pursuing two separate equitable remedies against EnvirOx.

First, QVC seeks to pierce the corporate veil and hold EnvirOx vicariously liable for OurHouse's debts. Under this theory, EnvirOx, while technically a distinct entity, should nonetheless be held vicariously liable for OurHouse's breach of contract because the two corporations functioned as one and it would be unjust to treat them as separate entities for liability purposes. Although QVC characterizes this as an independent "claim" against EnvirOx, piercing the corporate veil "is not itself an action"; it is an equitable remedy that permits a court to hold one party vicariously liable for another's debt on an underlying substantive claim.[8] What QVC brings before the court, then, is an equitable request that EnvirOx be made to pay for OurHouse's underlying breach of contract.[9]

Second, QVC brings a standalone claim against EnvirOx for unjust enrichment. This claim, unlike QVC's veil-piercing request, does not seek to hold EnvirOx vicariously liable for OurHouse's underlying breach of contract. Rather, it is a separate,

---

[8] *Int'l Fin. Servs. Corp. v. Chromas Techs. Can., Inc.*, 356 F.3d 731, 736 (7th Cir. 2004); *Bd. of Trustees v. Elite Erectors, Inc.*, 212 F.3d 1031, 1038 (7th Cir. 2000).

[9] We therefore treat QVC's veil-piercing "claim" as an appeal of the District Court's refusal to grant the equitable remedy of piercing the corporate veil. We review this decision *de novo*. *Craig v. Lake Asbestos of Quebec, Ltd.*, 843 F.2d 145, 148-49 (3d Cir. 1988); *Piper Aircraft Corp. v. Wag-Aero, Inc.*, 741 F.2d 925, 939 (7th Cir. 1984) (Posner, J. concurring).

direct, equitable claim seeking the return of money or benefits that EnvirOx allegedly retained unjustly over the course of the parties' dealings.

Confusion arises in this case because Illinois law incorporates unjust-enrichment principles into the veil-piercing analysis. To pierce the corporate veil in Illinois, a plaintiff must do more than show that two entities failed to respect corporate formalities. There must also be a "plus" factor: some element of fraud or injustice that, in the absence of veil-piercing, would allow the parent corporation to benefit at the plaintiff's expense. Under Illinois law, the unjust enrichment of a parent corporation qualifies as a "plus" factor. What this means in practice, however—and in particular, what it means when the plaintiff also brings a standalone unjust enrichment claim—is unclear. The result is a welter of incompatible assumptions: QVC assumes that any showing of unjust enrichment will entitle it to pierce the corporate veil; EnvirOx assumes that any bar to QVC's standalone enrichment claim will necessarily bar veil-piercing; and the District Court appeared to assume that EnvirOx and OurHouse could be deemed separate entities for veil-piercing purposes but a single entity for unjust-enrichment purposes.

We do not intend to sort out each of these positions on appeal. Rather, having identified a mistake of law in the District Court's reasoning, we will remand for further factfinding and development of QVC's breach-of-contract claim.

\* \* \*

We begin with the veil-piercing issue. Illinois imposes two requirements that must be met before a court will pierce the veil between corporate affiliates. First, "there must be such unity of interest and ownership that the separate personalities of the

6

corporation and the individual [or other corporation] no longer exist."[10]  The District Court found that the relationship between OurHouse and EnvirOx satisfied this first requirement, and we see no grounds to disturb this holding on appeal.[11]

Unity of interest and ownership, however, is not enough.  Illinois also requires a second, equitable "plus" factor: the "circumstances must be such that adherence to the fiction of separate corporate existence would sanction a fraud or promote injustice."[12]

---

[10] *Sea-Land Servs., Inc. v. Pepper Source*, 941 F.2d 519, 520 (7th Cir. 1991) ("*Sea-Land I*") (quoting *Van Dorn Co. v. Future Chemical and Oil Corp.*, 753 F.2d 565, 569-70 (7th Cir. 1985)).

[11] The District Court found that OurHouse and EnvirOx commingled funds and assets; that OurHouse was financially dependent on EnvirOx; that EnvirOx disregarded corporate distinctions by treating OurHouse as a "product line" rather than a separate company; that EnvirOx identified OurHouse revenue as revenue attributable to EnvirOx; and that EnvirOx did not differentiate between itself and OurHouse in its dealings with QVC.  *QVC*, 2014 U.S. Dist. LEXIS 152040, at *1 n.1; *see also Van Dorn*, 753 F.2d at 570 (identifying factors relevant to the "unity of interest and ownership" test).  While EnvirOx appears to dispute some of these findings, it has not established that they were clearly erroneous.  *See Berg Chilling Sys. v. Hull Corp.*, 369 F.3d 745, 754 (3d Cir. 2004) (factual finding is clearly erroneous only if it is "completely devoid of minimum evidentiary support displaying some hue of credibility or bears no rational relationship to the supportive evidentiary data") (internal quotation marks omitted).

That said, the District Court's conclusion that EnvirOx "was the alter ego" of OurHouse is potentially confusing.  *QVC*, 2014 U.S. Dist. LEXIS 152040, at *1.  If EnvirOx were truly OurHouse's alter ego as a matter of law, it would be directly liable for OurHouse's debt and QVC would be entitled to judgment.  *See Board of Trustees*, 212 F.3d at 1038 ("Efforts to pierce the corporate veil ask a court to hold A vicariously liable for B's debt. . . .  But a contention that A is B's 'alter ego' asserts that A and B are the same entity; liability then is not vicarious but direct.").  It is apparent from the remainder of the District Court's opinion, however, that the court simply used the term "alter ego" as shorthand for its legal conclusion that the relationship between EnvirOx and OurHouse satisfied the first part of Illinois' two-part veil-piercing test.  *See QVC, Inc.*, 2014 U.S. Dist. LEXIS 152040, at *2-7 (discussing application of second veil-piercing requirement).

[12] *Sea-Land I*, 941 F.2d at 520 (quoting *Van Dorn Co.*, 753 F.2d at 570).

With respect to this second factor, the District Court held that QVC could demonstrate neither fraud nor injustice—only the existence of an unsatisfied judgment against OurHouse. On appeal, QVC argues that EnvirOx unjustly enriched itself at QVC's expense; that refusing to pierce the corporate veil between EnvirOx and OurHouse would therefore "promote injustice"; and that the District Court's contrary conclusion was reversible error.

To prove that adhering to the fiction of corporate separation would "promote injustice," a plaintiff must show "something more than the mere prospect of an unsatisfied judgment."[13] In *Sea-Land Services, Inc. v. Pepper Source* ("*Sea-Land I*"), the Seventh Circuit clarified that the plaintiff must show that unless the veil is pierced, "some 'wrong' beyond a creditor's inability to collect would result: . . . **a party would be unjustly enriched**; a parent corporation that caused a sub's liabilities and its inability to pay for them would escape those liabilities; or an intentional scheme to squirrel assets into a liability-free corporation while heaping liabilities upon an asset-free corporation would be successful."[14]

Seizing on the bolded language, QVC argues that EnvirOx would be unjustly enriched if the court does not pierce the corporate veil, and cites a number of cases in which courts applying Illinois law have pierced the veil to prevent an ostensibly separate

---

[13] *Hystro Prods. v. MNP Corp.*, 18 F.3d 1384, 1390 (7th Cir. 1994) (quoting *Sea-Land I*, 941 F.2d at 522-23).

[14] *Sea-Land I*, 941 F.2d at 524 (emphasis added).

entity from being unjustly enriched.[15]   Under this reasoning, if QVC can prove that EnvirOx was unjustly enriched as a matter of law, it may be entitled under *Sea-Land* to pierce the corporate veil between EnvirOx and OurHouse.

The question then becomes: was EnvirOx unjustly enriched?  Illinois law defines unjust enrichment as "the receipt of money or its equivalent under circumstances that, in equity and good conscience, suggest that it ought not to be retained because it belongs to someone else."[16]   In support of both its veil-piercing request and its standalone unjust enrichment claim, QVC cites evidence allegedly demonstrating that, among other things, (i) EnvirOx endorsed and deposited the checks that QVC used to pay OurHouse, (ii) booked funds paid by QVC to OurHouse on EnvirOx's books, and (iii) retained possession of returned merchandise for which QVC was entitled to a refund.[17]   EnvirOx counters that the checks erroneously deposited through the EnvirOx bank account were in fact recorded on OurHouse's financial statements, that QVC's claimed unjust enrichment damages are duplicative of its breach of contract damages against OurHouse, and that QVC has not established the value of any merchandise retained by EnvirOx.[18]

The District Court did not resolve these competing factual claims or determine whether EnvirOx was in fact unjustly enriched.  Instead, it ruled that QVC was legally

---

[15] *See Sea-Land Servs., Inc. v. Pepper Source*, 993 F.2d 1309, 1312 (7th Cir. 1993) ("*Sea-Land II*"); *Wachovia Sec., LLC v. Neuhauser*, 528 F. Supp. 2d 834, 856-57 (N.D. Ill. 2007); *Dimmitt & Owens Fin., Inc. v. Superior Sports Prods., Inc.*, 196 F. Supp. 2d 731, 743 (N.D. Ill. 2002).

[16] *Sea-Land II*, 993 F.2d at 1312.

[17] *See* Opening Br. 20 and record citations therein.

[18] *See* Response Br. 10-12 and record citations therein.

9

barred from pursuing an unjust enrichment claim—and therefore could not pierce the corporate veil—because "there is no claim of fraud and the relationship of the parties is founded upon a written contract."[19] While we agree that the unjust enrichment claim should be dismissed, the District Court's ruling misreads Illinois law at several junctures.

As an initial matter, fraud is not an element of either unjust enrichment or the *Sea-Land I* veil-piercing test. To prove unjust enrichment, QVC need only demonstrate that EnvirOx received "money or its equivalent under circumstances that, in equity and good conscience, suggest that it ought not to be retained because it belongs to someone else."[20] To pierce the corporate veil, QVC need only demonstrate that failure to pierce "would sanction a fraud *or* promote injustice."[21] As detailed above, the disjunctive "promote injustice" prong can be satisfied by proof of unjust enrichment, without proof of fraud. Therefore, QVC's failure to allege fraud is not fatal to its claims.

We agree with the District Court, however, that QVC cannot simultaneously pursue contract-related damages from EnvirOx under both veil-piercing and unjust-enrichment theories. Unlike the District Court, we do not base this conclusion on the rule barring standalone unjust enrichment claims between contracting parties. Rather, we rely on the background principle that veil-piercing and unjust enrichment are both equitable remedies that should not be applied in a manner that would promote unfairness or destabilize substantive state-law doctrines. In this case, permitting a party that has

---

[19] *QVC*, 2014 U.S. Dist. LEXIS 152040, at *7.

[20] *Sea-Land II*, 993 F.2d at 1312.

[21] *Sea-Land I*, 941 F.2d at 520 (emphasis added) (quoting *Van Dorn Co.*, 753 F.2d at 570).

contracted with a subsidiary to recover damages from a corporate parent on an unjust enrichment theory would allow plaintiffs to evade Illinois corporate liability limitations.[22] QVC cannot use the equitable remedy of unjust enrichment to circumvent state veil-piercing requirements and recover money or merchandise that it would otherwise be forced to seek from OurHouse in a standard breach-of-contract action.

But contrary to the District Court's underlying assumption, the failure of QVC's standalone unjust enrichment claim is not by itself fatal to QVC's veil-piercing request. As the Seventh Circuit's *Sea-Land II* decision illustrates, piercing the corporate veil on an unjust enrichment theory only requires the plaintiff to establish that the shielded entity was unjustly enriched, and does not require the plaintiff to satisfy the additional prerequisites necessary to sustain a standalone unjust enrichment claim against the shielded entity. In *Sea-Land II*, as here, the plaintiff contracted with a subsidiary; the subsidiary breached and the plaintiff sued the owner under a veil-piercing theory; the plaintiff established unity of ownership and interest between the owner and subsidiary; and the plaintiff relied on the owner's unjust enrichment as the "plus" factor under *Sea-Land I*.[23] The Seventh Circuit held that the plaintiff was entitled to pierce the corporate veil because it had adequately demonstrated that the owner received "money or its equivalent under circumstances that, in equity and good conscience, suggest that it ought

---

[22] *See United States v. Dean Van Lines, Inc.*, 531 F.2d 289, 293 (5th Cir. 1976) (rejecting standalone unjust enrichment claim against corporate parent because permitting indirect liability for the wrongdoings of a subsidiary would "rewrite established state law of shareholder liability").

[23] *See Sea-Land I*, 941 F.2d at 519-22; *Sea-Land II*, 993 F.2d at 1311-12.

not to be retained because it belongs to someone else."[24]   The fact of enrichment was sufficient, on its own, to satisfy the *Sea-Land I* test.  The Court did not go on to suggest that veil-piercing was contingent on the plaintiff's ability to sustain a standalone unjust enrichment claim against the owner, or that the availability of independent defenses to a plaintiff's unjust enrichment claim should have any bearing on the analysis.  Accordingly, we conclude that it was legal error for the District Court to reject QVC's veil-piercing request on the ground that QVC was legally barred from bringing an independent unjust enrichment claim against EnvirOx.

IV.

Because the District Court ruled that QVC was legally barred from pursuing an unjust enrichment claim, it did not engage in factfinding to determine whether EnvirOx was in fact unjustly enriched or whether QVC was entitled to pierce the corporate veil on that basis.  As noted above, the parties vigorously dispute the factual predicates for QVC's unjust enrichment claim.  We will therefore remand to the District Court to determine whether EnvirOx was unjustly enriched as a result of EnvirOx's improper manipulation of the corporate form and, if so, whether veil-piercing is necessary to avoid the promotion of injustice.

In doing so, however, we sound a note of caution.  Veil-piercing is an equitable remedy that is meant to be awarded in the interests of justice, not mechanistically whenever certain technical conditions are satisfied.  We do not read the Seventh Circuit's

---

[24] *Id*. at 1312.

12

*Sea-Land I* decision to automatically require veil-piercing whenever a party has been unjustly enriched. The operative question under *Sea-Land I* is not whether a third party was unjustly enriched in the abstract, but whether the third party would be unjustly enriched *if the court does not pierce the corporate veil* and hold the third party vicariously liable on the underlying claim.[25] Likewise, *Sea-Land II* makes clear that the unjust enrichment must be the product of the parent's improper manipulation of the corporate form.[26] That nexus is what converts the defendant's gain into an "injustice" that permits a court to equitably disregard the fiction of separate corporate existence. Accordingly, if the District Court determines that EnvirOx was unjustly enriched—a question on which we take no position—it must also consider the source of such enrichment, the amount of any enrichment in relation to QVC's breach-of-contract damages, and the degree to which the unjust enrichment arises from, or is connected to, EnvirOx's alleged abuse of the corporate form.

V.

For the foregoing reasons, we will vacate the District Court's October 27, 2014 judgment to the limited extent that it enters judgment in favor of EnvirOx and against QVC on QVC's contract claim, and remand for further proceedings consistent with this opinion.

---

[25] *Sea-Land I*, 941 F.2d at 524.

[26] *See Sea-Land II*, 993 F.2d at 1312 (veil-piercing permitted where the owner "was enriched unjustly by his intentional manipulation and diversion of funds from his corporate entities").