**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

_____

No. 17-1237

_____

QVC INC

v.

OURHOUSEWORKS LLC;
ENVIROX LLC; JOHN DOES 1-10

Envirox, LLC,
                    Appellant

_____

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA
(D.C. No. 2-12-cv-02871)
District Judge: Hon. Jan E. DuBois

_____

Submitted Pursuant to Third Circuit L.A.R. 34.1(a)
May 22, 2018

_____

Before: MCKEE, SHWARTZ, and COWEN, <u>Circuit Judges</u>.

(Opinion Filed: August 16, 2018)

_____

OPINION[*]

_____

SHWARTZ, <u>Circuit Judge</u>.

---

[*] This disposition is not an opinion of the full Court and pursuant to I.O.P. 5.7 does not constitute binding precedent.

Defendant EnvirOx LLC ("EnvirOx") appeals the District Court's order piercing the corporate veil between EnvirOx and OurHouseWorks, LLC ("OurHouse") and holding EnvirOx liable for damages to Plaintiff QVC, Inc. ("QVC"). We agree with the District Court and will affirm.

I

Our opinion in QVC, Inc. v. OurHouseWorks, LLC, 649 F. App'x 223 (3d Cir. 2016) ("QVC, Inc. II"), sets forth many of the relevant facts:

> Plaintiff QVC is a general merchandise retailer that markets products through direct response television programming and the internet. At the time of suit, defendants OurHouse . . . and EnvirOx were ostensibly separate Illinois corporations that manufactured and sold consumer products, including household and commercial cleaning products. Although separately incorporated, the companies were closely related such that OurHouse functioned as a "division" or "product line" of EnvirOx.

> In early 2008, QVC issued four Purchase Orders to OurHouse for the purchase and delivery of various household cleaning kits. The Purchase Orders gave QVC the right to return to OurHouse any merchandise sold by QVC that (1) was subsequently returned to QVC by its retail customers for any reason, or (2) failed to meet QVC's quality control tests. The Purchase Orders further obligated OurHouse to refund to QVC all payments made for returned or substandard merchandise. QVC paid OurHouse for the kits; OurHouse delivered the kits to QVC; and QVC began marketing the kits on its television programs in the spring of 2008.

> Thereafter, QVC returned to OurHouse certain batches of merchandise that had either failed to meet QVC's quality standards or had been returned by retail customers. QVC demanded a refund for this merchandise and for other merchandise that had been returned to QVC by retail customers but not yet delivered to OurHouse. OurHouse refused to pay. OurHouse subsequently ceased business operations in early 2009 before formally dissolving in October 2010; EnvirOx, however, remains in business. In 2012, QVC brought suit against OurHouse and EnvirOx for breach of contract and unjust enrichment, alleging, inter alia, that EnvirOx controlled OurHouse and was therefore liable for its debts.

2

Following a bench trial, the District Court ruled that OurHouse had breached its contracts with QVC, and ordered OurHouse to pay QVC $204,368, inclusive of interest. But the District Court also ruled that QVC could not pierce the corporate veil between EnvirOx and OurHouse, and therefore entered judgment for EnvirOx on QVC's vicarious liability claim. The court further held that because the relationship between QVC and EnvirOx was founded on a contract, QVC was legally prohibited from bringing its unjust enrichment claim against EnvirOx. The result of the District Court's rulings was that QVC could not recover its breach of contract damages against anyone able to pay. QVC . . . appeal[ed] the veil-piercing and unjust-enrichment rulings.

Id. at 224–25.

We affirmed the judgment dismissing the standalone claim for unjust enrichment against EnvirOx but vacated the judgment in favor of EnvirOx on QVC's contract claim. Id. at 230. In vacating the judgment, we explained that "Illinois imposes two requirements that must be met before a court will pierce the veil between corporate affiliates." Id. at 226.[1] "First, 'there must be such unity of interest and ownership that the separate personalities of the corporation and the individual [or other corporation] no longer exist.'" Id. (quoting Sea-Land Servs., Inc. v. Pepper Source, 941 F.2d 519, 520 (7th Cir. 1991) ("Sea-Land I")). Second, the evidence must reflect "'circumstances . . . [showing] that adherence to the fiction of separate corporate existence would sanction a fraud or promote injustice.'" Id. at 227 (quoting Sea-Land I, 941 F.2d at 520). Because the District Court ruled that QVC was legally barred from pursuing an unjust enrichment claim, it did not decide whether EnvirOx was unjustly enriched, and so we "remand[ed] to the District Court to determine whether EnvirOx was unjustly enriched as a result of

_____

[1] The parties agree that Illinois law governs this dispute.

3

EnvirOx's improper manipulation of the corporate form and, if so, whether veil-piercing is necessary to avoid the promotion of injustice." QVC, Inc. II, 649 F. App'x at 229. We also directed the District Court to "consider . . . the amount of any enrichment in relation to QVC's breach-of-contract damages, and the degree to which the unjust enrichment arises from, or is connected to, EnvirOx's alleged abuse of the corporate form." Id. at 229–30.

On remand, the District Court concluded that "EnvirOx was unjustly enriched as a result of its improper manipulation of the corporate form," QVC, Inc. v. OurHouseWorks, LLC, No. CV 12-2871, 2016 WL 7491636, at *4 (E.D. Pa. Dec. 30, 2016) ("QVC, Inc. III"), and that "[p]iercing of the corporate veil is necessary to avoid this injustice," id. at *5. The Court found that OurHouse was "tout[ed]" as a "division" of EnvirOx in marketing materials, id. at *3; "EnvirOx endorsed and deposited the eight checks issued by QVC in the name of OurHouse into EnvirOx's bank account . . . despite the fact that EnvirOx and OurHouse maintained separate bank accounts," id. at *2; "EnvirOx's income statements identify OurHouse revenue, including revenue from QVC, as revenue attributable to EnvirOx," id.; OurHouse and EnvirOx's assets were commingled, id.; and EnvirOx, not OurHouse, liquidated the excess inventory that was manufactured for QVC, id. at *3. The Court held that, because "[t]he benefits derived by EnvirOx were the direct result of its relationship to OurHouse," piercing of the corporate veil was necessary to avoid injustice, and determined "the amount of . . . enrichment in relation to QVC's breach-of-contract damages," QVC Inc. II, 649 F. App'x at 229-30, to be $308,439.38, QVC Inc. III, 2016 WL 7491636, at *5.

4

EnvirOx appeals.

## II

## A[2]

"When reviewing a judgment entered after a bench trial, we exercise plenary review over the District Court's conclusions of law and review the District Court's findings of fact for clear error." CG v. Pa. Dep't of Educ., 734 F.3d 229, 234 (3d Cir. 2013) (citation omitted). Clear error is present if the District Court's findings are "completely devoid of minimum evidentiary support displaying some hue of credibility or bear[] no rational relationship to the supportive evidentiary data." Berg Chilling Sys. v. Hull Corp., 369 F.3d 745, 754 (3d Cir. 2004) (internal quotation marks and citation omitted).[3]

## B

As previously stated, under Illinois law, to pierce the corporate veil:

[f]irst, there must be such unity of interest and ownership that the separate personalities of the corporation and the individual [or other corporation] no longer exist; and second, circumstances must be such that adherence to the fiction of separate corporate existence would sanction a fraud or promote injustice.

---

[2] The District Court had jurisdiction pursuant to 28 U.S.C. § 1332(a). We have jurisdiction pursuant to 28 U.S.C. § 1291.

[3] During the pendency of the first appeal, the original trial judge retired, and a new judge was assigned. EnvirOx contends that the new judge's findings are not entitled to clear error review because that judge did not hear testimony or admit any additional evidence beyond what was admitted by the original judge. EnvirOx provides no precedent in support of this proposition. Moreover, the new judge relied on facts found by the original judge and none of them involved credibility assessments as they were based on or corroborated by undisputed documents.

5

<u>Sea-Land I</u>, 941 F.3d at 520 (alteration in original) (citations omitted).  We previously affirmed the District Court's finding that QVC met the first requirement.[4]  <u>QVC Inc. II</u>, 649 F. App'x at 226.  "Under the law of the case doctrine, once an issue has been decided, parties may not relitigate that issue in the same case."  <u>Waldorf v. Shuta</u>, 142 F.3d 601, 616 n.4 (3d Cir. 1998).  As a result, we need only examine whether the Court correctly found that the second requirement to pierce the corporate veil has been met.

To satisfy the second element for piercing the corporate veil, QVC must show: (1) "EnvirOx was unjustly enriched [(2)] as a result of [its] improper manipulation of the corporate form and . . . [(3)] veil-piercing is necessary to avoid the promotion of injustice."  <u>QVC, Inc. II</u>, 649 F. App'x at 229; <u>see</u> <u>also</u> <u>Sea-Land I</u>, 941 F.3d at 520, 524; <u>Sea-Land Servs., Inc. v. Pepper Source</u>, 993 F.2d 1309, 1312 (7th Cir. 1993) ("Sea-Land II").  Under Illinois law, courts may pierce the corporate veil to avoid "promoting injustice," such as where "a party would be unjustly enriched."  <u>Sea-Land I</u>, 941 F.2d at 524.  "[U]njust enrichment [is defined] as the receipt of money or its equivalent under circumstances that, in equity and good conscience, suggest that it ought not to be retained because it belongs to someone else."  <u>Sea-Land II</u>, 993 F.2d at 1312.  Based on the

---

[4] The District Court held that OurHouse and EnvirOx were alter egos based upon the fact that "OurHouse and EnvirOx commingled funds and assets[,] that OurHouse was financially dependent on EnvirOx[,] that EnvirOx disregarded corporate distinctions by treating OurHouse as a 'product line' rather than a separate company[,] that EnvirOx identified OurHouse revenue as revenue attributable to EnvirOx[,] and that EnvirOx did not differentiate between itself and OurHouse in its dealings with QVC," <u>QVC, Inc. II</u>, 649 F. App'x at 226 n.11.  We saw "no grounds to disturb this holding on appeal." <u>Id.</u> at 226.

following facts, the District Court concluded that EnvirOx was unjustly enriched because it received and retained funds that were due to QVC for returned products: (1) "EnvirOx endorsed and deposited the eight checks issued by QVC in the name of OurHouse into EnvirOx's bank account . . . despite the fact that EnvirOx and OurHouse maintained separate bank accounts," QVC, Inc. III, 2016 WL 7491636, at *2; (2) "EnvirOx's income statements identify OurHouse revenue, including revenue from QVC, as revenue attributable to EnvirOx," id. at *3; (3) OurHouse and EnvirOx's assets were commingled, id.; and (4) EnvirOx, not OurHouse, liquidated the excess inventory that was manufactured for QVC, id. These findings are not clearly erroneous because they bear a "rational relationship" to the evidence in the record. See Berg Chilling Sys, 369 F.3d at 754. Moreover, they show that EnvirOx received money that should have been refunded to QVC for the returned product.

EnvirOx argues that it was not unjustly enriched by its receipt of QVC generated-revenue[5] and the returned merchandise. As to its receipt of QVC generated-revenue, EnvirOx argues that it was not unjustly enriched because it was the entity that actually performed the contract by supplying the product. Whether EnvirOx is entitled to payment for its production of merchandise is different from whether EnvirOx may retain money that QVC is entitled to receive as a refund. Furthermore, EnvirOx's assertion that

---

[5] EnvirOx contends that because EnvirOx and OurHouse properly accounted for the QVC-generated revenue at issue, the District Court improperly relied on EnvirOx's deposit of QVC's checks as evidence of commingling of funds and unjust enrichment. While the Court found that any commingled funds were properly accounted for, that is irrelevant. The fact the money can be accounted for does not mean EnvirOx was not unjustly enriched by its receipt of those funds. See Sea-Land II, 993 F.2d at 1312.

7

"QVC presented no evidence that EnvirOx . . . realized any financial or equivalent value . . . from its storage or liquidation of QVC-returned product," Appellant Br. 40, is unsupported by the record because EnvirOx donated the QVC-returned product for a tax benefit. Therefore, EnvirOx was unjustly enriched by its receipt of the QVC-generated revenue and liquidation of the QVC-returned product.

The evidence also shows that EnvirOx was unjustly enriched "as a result of [its] improper manipulation of the corporate form . . . ." QVC, Inc. II, 649 F. App'x at 229; see also Sea-Land I, 941 F.3d at 520, 524; Sea-Land II, 993 F.2d at 1312. Among other things, the President/Chief Operating Officer of Envirox described OurHouse as "a product line [of EnvirOx], not a separate company." App. 74. This intertwined relationship[6] enabled EnvirOx to deposit QVC's checks into its own accounts and retain the QVC-returned products.

QVC has also shown that veil-piercing is "necessary to avoid the promotion of injustice," QVC, Inc. II, 649 F. App'x at 229; see also Sea-Land I, 941 F.3d at 520, 524; Sea-Land II, 993 F.2d at 1312, because QVC is contractually entitled to a refund for returned merchandise, but the money is held by an entity who is not a party to the contract. Rather, the noncontracting party, EnvirOx, deposited the money into its

_____

[6] EnvirOx argues that even if it was unjustly enriched because of its relationship with OurHouse, QVC cannot pierce the corporate veil because QVC did not rely on OurHouse's separate corporate existence. EnvirOx misreads Illinois law. QVC is not required to show reliance on an entity's distinct corporate form in order to pierce the corporate veil. Indeed, the case on which EnvirOx relies, On Command Video Corp. v. Roti, to assert a reliance requirement articulated the same test for corporate veil-piercing that we instructed the District Court to apply upon remand and which does not contain, as an element, reliance on a distinct corporate form. 705 F.3d 267, 274 (7th Cir. 2013).

8

accounts. By placing the funds to which QVC is entitled into its own account, EnvirOx was unjustly enriched and to allow EnvirOx to keep the funds is an injustice.[7] See Sea-Land II, 993 F.2d at 1312 (affirming decision to pierce the corporate veil because the defendant used his corporations to avoid responsibilities to creditors and was thus unjustly enriched); Wachovia Sec., LLC v. Neuhauser, 528 F. Supp. 2d 834, 856-57 (N.D. Ill. 2007) (denying summary judgment because if the corporate veil were not pierced, defendants would "be unjustly enriched because they will be rewarded for using, transferring and diverting money to which [plaintiff] was legally entitled").

Because OurHouse's alter ego, EnvirOx, was unjustly enriched by its receipt of QVC-generated revenue and QVC-returned products as a result of its relationship with OurHouse, and piercing the corporate veil and ordering EnvirOx to refund the money for the returned product is necessary to avoid promoting injustice, the District Court correctly entered judgment in favor of QVC and against EnvirOx on QVC's contract claim.[8]

### III

For the foregoing reasons, we will affirm.

---

[7] EnvirOx's contention that this conduct does not amount to an injustice because it does not involve fraud or deception fails because, under Illinois law, "either the sanctioning of a fraud (intentional wrongdoing) or the promotion of injustice . . . will satisfy the second element." Sea-Land I, 941 F.2d at 522 (internal quotation marks, citations, and emphasis omitted).

[8] EnvirOx's contention that QVC's claim should be barred by the doctrine of unclean hands is waived because it explicitly raised this defense for the first time in this appeal. See, e.g., Shell Petroleum, Inc. v. United States, 182 F.3d 212, 219 (3d Cir. 1999) (noting that "absent compelling circumstances an appellate court will not consider issues that are raised for the first time on appeal").